Argued February 18, decided March 30, rehearing denied April 27, 1909.

## HUGHES v. CITY OF PORTLAND.

[100 Pac. 942.]

MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — SPECIAL ASSESSMENTS—REASSESSMENT.

1. The purpose of Portland City Charter, § 400, giving the city council power to make a reassessment where an assessment for a local improvement has been annulled by a court, or where the council shall be in doubt as to its validity, is to provide a curative procedure to supplement a preceding act which has failed; and the council's power is not exhausted by one attempt to make a reassessment, but it may continue to exercise the granted powers until a valid reassessment is secured.

MUNICIPAL CORPORATIONS—LOCAL IMPROVEMENTS—IMPROVEMENTS UNDER FORMER CHARTER—POWER OF CITY TO LEVY ASSESSMENTS.

2. The fact that under Portland City Charter 1898, § 127 (Laws 1898, p. 150), under which a local improvement was made, the contractor was required to look solely to the property affected by the improvement and the owners thereof for compensation, would not preclude the city under its subsequent charter from exercising the power to charge the property benefited by the improvement with a lien for its share of the cost.

MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — REASSESSMENT — REMONSTRANCE.

3. Portland City Charter, § 400, under which a reassessment for a local improvement was made, provides that a reassessment of the costs of a local

improvement shall not be made in case of a street improvement, where a remonstrance sufficient in law to defeat it shall have been filed. The Charter of 1898, under which the original assessment was made, provided that when a remonstrance signed by the owner of more than one-half of the property abutting on the proposed works should be filed it should be a bar to the proceedings, unless the owners of one-half or more of the property should petition therefor. *Held* that, where a remonstrance was filed against the original proceeding, it was for the council to determine whether it was signed by the requisite number of property owners, so as to be a bar to the proceedings at the proper time during the original proceeding, or on the hearing of the objections to the proposed reassessment, if urged as an objection thereto.

MUNICIPAL CORPORATIONS — LOCAL IMPROVEMENTS — RESOLUTION FOR REASSESSMENT—SUFFICIENCY.

4. A resolution for a reassessment upon property for a local improvement under Portland City Charter, § 400, conferring power on the council to make a reassessment, and providing that the procedure therefor shall be sufficient if it appears therefrom that the previous assessment has been set aside, annulled, or declared void by a court of competent jurisdiction, or that the council is in doubt as to its validity, declares the district benefited by the improvement for which the reassessment is made, and directs the auditor or city engineer to prepare a preliminary reassessment upon the property included therein within a fixed time, need not contain findings as to the value of the improvement or the benefit thereof, or whether the street had in fact been improved in substantial compliance with the contract, but whether the street has in fact been so improved (if not previously determined by the council), the benefit to abutting property and the proper apportionment thereof are questions which may be raised by the property owners on objections to the reassessment.

MUNICIPAL CORPORATIONS — LOCAL IMPROVEMENTS — REASSESSMENT — HEARING OF OBJECTIONS.

5. Under Portland City Charter, § 400, giving to the owners of property affected by a proposed reassessment by the council for a local improvement, the right within ten days from the last publication of the required notice thereof, to file with the auditor their objections in writing to the assessment, the objections may raise either questions of law affecting the validity of the proceedings, or of jurisdiction or power of the council, or they may involve questions of fact, such as that the improvement had not been made in substantial compliance with the contract and ordinance providing for it, or that the proceedings had been defeated by a proper remonstrance, if the questions are not already concluded by the council's findings; and the council is required to hear and determine such objections as are open to the property holder, and it should appear in the record of its proceedings or the reassessment ordinance that it has done so, and while, if the issue raised by the preliminary assessment and the objections be an issue of law, it will be sufficient if the minutes show that it has been overruled, if issues of fact be raised there should be a finding of the council thereon, either in the record or ordinance, sufficient to show that the questions have been heard and the result, and they cannot be summarily disposed of by a general order overruling them or ordering them to be placed on file.

MUNICIPAL CORPORATIONS — LOCAL IMPROVEMENTS — REASSESSMENT — REVIEW—PRESUMPTIONS.

6. It will not be assumed by a court reviewing proceedings for the reassessment of a local improvement, that issues of fact raised by objections to the preliminary reassessment were determined by the council adversely to the

objectors, from the mere fact that the council passed the reassessment ordinance, except so far as recitals in the ordinance may be a finding thereof.

MUNICIPAL CORPORATIONS—LOCAL IMPROVEMENTS—ASSESSMENT AND REASSESSMENT—HEARING OF OBJECTIONS.

7. The right of property owner to make objections to a proposed assessment or reassessment against his property for a local improvement, or a reassessment under Portland City Charter, § 400, providing for reassessment for local improvements, and have the objections heard and determined by the council, is a substantial right, and all the requirements of the law affecting his rights must be complied with, and the proceedings must show upon their face that the council has considered and passed upon all questions made necessary by the charter, and the result at which they have arrived.

MUNICIPAL CORPORATIONS — LOCAL IMPROVEMENTS — REASSESSMENT — HEARING OF OBJECTIONS—SUFFICIENCY OF OBJECTIONS.

8. That a property owner may insist upon his right to be heard on his objections, he must specifically set out wherein the proposed reassessment is invalid or unjust, so that the council may be advised of the question he presents for determination, as the presumption is that the auditor upon whom the charter imposes the duty of making the preliminary reassessment has discharged his duty properly, and a general objection that it is not made according to benefits or that the apportionment is unjust is not sufficient.

MUNICIPAL CORPORATIONS—LOCAL IMPROVEMENTS—PREMATURE REASSESSMENT — HEARING — FAILURE TO HEAR AND DETERMINE OBJECTIONS.

9. Where it appears from the record, that the council referred objections of property owners presenting questions of fact, to a reassessment under Portland City Charter, § 400, relating to reassessment for local improvements, to a committee, and that the committee did not report on them until after the reassessment ordinance had been adopted, the reassessment ordinance was prematurely and erroneously passed.

MUNICIPAL CORPORATIONS—LOCAL IMPROVEMENTS—PRELIMINARY REASSESSMENT BY AUDITOR—SUFFICIENCY.

10. The preliminary reassessment made by the auditor under Portland City Charter, § 400, providing for a reassessment for a local improvement and the procedure therefor, is merely intended to advise property owners of the amounts proposed to be charged against their property, and form the basis for the council's action in making the actual reassessment, and it is not necessary that the auditor should indicate thereon the method pursued by him, nor that his reassessment should contain a statement that it was made in accordance with the benefits according to the provisions of the charter, as that will be presumed.

MUNICIPAL CORPORATIONS — LOCAL IMPROVEMENTS — REASSESSMENT — DUTY OF COUNCIL.

11. Under Portland City Charter, § 400, providing for the reassessment for a local improvement and the procedure therefor, the city council is the only tribunal authorized to make a reassessment, it having power in its discretion to revise and correct the auditor's preliminary reassessment or set it aside and order a new one, and it is essential to the validity of the reassessment as made by the council, that it clearly appear upon its face, that the provisions of the law, for the benefit of the property owners, have been observed, and that the council has exercised its judgment in passing upon the questions of benefits and in applying to each lot and parcel of land benefited, its proportionate share of the cost.

MUNICIPAL  CORPORATIONS — LOCAL  IMPROVEMENTS — REASSESSMENTS —
   BENEFITS—CONCLUSIVENESS OF COUNCIL'S FINDINGS.
12. When a city council in making an assessment for a local improvement
has exercised its judgment in determining the extent to which property is
benefited, and the proportionate share of the cost which should be charged
against it, its decision, in the absence of fraud or demonstrable mistake of
fact, is conclusive, except as a right of appeal may be given by the city char-
ter, or unless it has proceeded upon an erroneous principle of law.

MUNICIPAL CORPORATIONS—LOCAL IMPROVEMENTS—REASSESSMENT.
13. If a reassessment for a local improvement by a city council purports
to have been made according to benefits, it will not be disturbed because it
does not clearly appear on its face that the council has considered and passed
on the question of benefits, except on appeal as provided by the city charter,
if under any conceivable condition the finding of the council could legally
and properly have been made, even though the reassessment may have been
in fact made according to the front-foot rule, when the charter requires that
it shall be made according to benefits.

MUNICIPAL CORPORATIONS—LOCAL IMPROVEMENTS—REASSESSMENT.
14. It is not necessary that the record of the council or ordinance making
a reassessment for a local improvement should disclose the method of assess-
ment.

MUNICIPAL CORPORATIONS—LOCAL IMPROVEMENTS—REASSESSMENT.
15. When an ordinance of the City of Portland making reassessment for
a local improvement contained a finding that the property assessed was
specially benefited in the several respective amounts charged to it, but con-
tained no finding that each parcel of land within the assessment district was
assessed only to the extent of its respective and proportionate share of the
full value of the improvement, and it affirmatively appeared that such an
assessment had not been made, the reassessment ordinance was invalid,
Portland City Charter, § 400, providing that the reassessment shall be made
in accordance with the benefits, and also that each parcel of land shall be
assessed only to the extent of its proportionate share of the cost.

From Multnomah: MELVIN C. GEORGE, Judge.

Statement by MR. JUSTICE BEAN.

This is a proceeding by writ of review to quash and annul a reassessment for the improvement of East Yamhill street in the City of Portland. In November, 1898, notice was given by the common council, in the manner directed in the then charter, that it intended to improve the street from the east curb line of East Water street to the west line of Union avenue by bringing the intersection of East First street to grade and covering the roadway thereof, full width, with 4 and 12-inch plank, and by constructing an elevated roadway along the remainder of the street, in accordance with plans and specifications on file in the auditor's office; and that the

time for filing remonstrances against such improvement would expire on December 12, 1898.

From a map accompanying the record, it appears that there are 32 city lots included in a district on either side of that part of the street proposed to be improved, and parallel with and extending back 100 feet therefrom, and, within the time required by law, a remonstrance, purporting to be signed by the owners of 17 of such lots, was filed. On December 16th one of the signers notified the council that he desired to withdraw his name from the remonstrance, and requested the auditor to erase it therefrom. On May 16, 1899, the council adopted an ordinance declaring the probable cost of the improvement, and assessing the amount thereof against the several lots and parcels of land, within the district alluded to, in the manner required by law, except that lot 6 in block 86 and lot 7 in block 87 were not included in such assessment, and no amounts were charged against either of such lots. The assessments against lot 8 in block 56, and lots 1, 2, and 8 in block 87, belonging to Hughes and Emmons, were not paid, and on February 15, 1905, the council adopted a resolution, reciting that it was in doubt as to the validity of the assessment, declaring that the property within a described district was specially and peculiarly benefited by such improvement, and directing the auditor to prepare a preliminary assessment and reassessment upon the lots and parcels of land within the district so established. But on April 5, 1905, further proceedings under the attempted reassessment were discontinued, by resolution of the council, because of a "conflict in the dates," and another resolution for a reassessment was adopted substantially the same as the former, except that the property declared to be benefited by the improvement was described by lots and blocks.

In pursuance of this resolution, the auditor prepared a preliminary assessment, and on May 3, 1905, it was

confirmed, approved, and adopted by the council, but it was subsequently set aside and annulled by the circuit court of Multnomah County on account of jurisdictional defects, and on October 18, 1905, the council passed another resolution, reciting the fact of such adjudication, declaring the property extending from the east curb line of East Water street to the west line of Union Avenue, and extending 100 feet south of and parallel with the south line of East Yamhill street, and 100 feet north of and parallel with the north line of East Yamhill street, to be specially and peculiarly benefited by such improvement, and directing the auditor to prepare a preliminary assessment and reassessment upon the lots, parts of lots, and parcels of land within such district to the extent of their respective and proportionate shares of the full value of such improvement, and to give notice thereof to the property owners affected by such assessment in the manner prescribed by the charter.

The auditor thereupon prepared what is denominated a "preliminary reassessment," which consisted simply of a copy of the original assessment, with interest added to the amount charged to the property of Hughes and Emmons (the other amounts, no doubt, having been paid), without any statement as to the manner in which he proceeded in making the assessment or whether it was made according to benefits, or was apportioned among the several parcels of property assessed to the extent of their respective and proportionate shares.

Notice of this preliminary reassessment was given by the auditor as required by the charter, and within the proper time plaintiffs filed objections thereto as follows:

"(1) We object to the same because it is not a reassessment, a former reassessment having been made, but an attempt to arbitrarily pursue that property and the owners thereof without any authority of law or equity for the proceeding, and without conferring any special and peculiar benefit upon it, and same is illegal and void.

"(2) We object to same because the city has not complied with the conditions precedent to the exercise of any

power of assessment or reassessment, or re-reassessment, and said assessment is illegal and void.

"(3) We object to the same because there never has been and there is not now any assessment, reassessment, or re-reassessment in accordance with the benefits, or any attempt made to make any assessment, reassessment, or re-reassessment in accordance with the benefits.

"(4) We object to the same because the city has never made any improvement which was a special and peculiar benefit to the property attempted to be taxed or assessed in this proceeding.

"(5) The property owners filed a legal remonstrance to the improvement, which was disregarded by the city, and the city has never had any legal power to make any assessment, reassessment, or re-reassessment, and all attempts to do so are illegal and void.

"(6) The circuit court of the State of Oregon for the county of Multnomah, in the proceedings by these property owners against the city, has adjudged that the city has no right to make any reassessment at all for this matter, and also that the power of reassessment has been exhausted in this matter.

"(7) The resolution attempting to provide for a reassessment in this proceeding is not in accordance with the charter. The auditor has not made a preliminary reassessment as required by said charter and said resolution. There has been no attempt made to make a preliminary reassessment in accordance with the special and peculiar benefits upon the property within the district; a deputy auditor has merely attempted to arbitrarily subdivide the property into many little districts composed of the lots or parts of lots abutting on the street, and, where abutting lots do not extend back 100 feet, to make another little district of part of lot lying within 100 feet of street and lot that abuts upon the street, and charge what the city engineer has arbitrarily estimated was the cost of the amount of work that ought to have been done before said property under the contract on the half street in front of it and on the one-fourth of the street intersection within 100 feet of the property, as a mathematical calculation without regard to benefits, or work actually done. Such a procedure is in violation of the charter, and does not make a legal and constitutional reassessment, and such pro-

cedure results in assessing the property within the district in an excessive amount, and we object to the same. The city has not any official newspaper, and there has been no notice published in the city official newspaper, and the·attempt to publish notice of this proceeding in the Portland Daily Abstract, which is not a· newspaper in any sense of the word as used in the English language, or in the sense of the word as used in the city charter of Portland, is an express violation of the charter of Portland. The notice attempted to be published is not in accordance with the charter of Portland and the resolution attempting to start this proceeding. The notice attempted to be mailed in this proceeding does not comply with the charter in any respect. If the council attempts to make any reassessment in this matter in any amount, we object to it as illegal and excessive.

"(8) The City of Portland and the council of the City of Portland are estopped from attempting to reassess the property of these objectors for this elevated roadway, which is built far above the land of these objectors, because the City of Portland and the members of the council of the City of Portland in the case of *Bottler v. City of Portland* and the Members of the Council of the City of Portland, in the circuit court of the State of Oregon for the county of Multnomah, and also in the case of *Samuel Wagner v. City of Portland* and the members of the Council of the City of Portland, before the circuit court of the State of Oregon for the county of Multnomah, have pleaded and contended that under the law, under the present charter, the City of Portland and the council of the City of Portland cannot improve or repair these elevated roadways and make any assessment upon the low abutting property, as such is not specially or peculiarly benefited by the building and maintaining of such elevated roadway. The City of Portland and the members of the council of the City of Portland are not allowed under the law to blow both hot and cold at the same time upon the same proposition of law and fact.

"(9) Section 127 of the charter of the City of Portland, in force when said contract was signed, provides as follows: 'Provided, however, and it is hereby expressly understood, that neither the City of Portland nor any officer thereof shall be liable for any portion of the cost

or expense of any street work, improvement of the construction or repair of any sewer or drain by reason of the delinquency of persons or property assessed for the payment of said work, improvement or sewer, or by reason of the inability of the said City of Portland to collect assessments levied for the payment for such work, improvement, or sewer, as aforesaid, and no moneys shall ever be paid out of the general fund of the city on account of any such work, improvement, or the construction of streets, or sewers, but contractors doing such work shall be required to look solely to the property affected by such improvement and the owners thereof.'

"And said written contract so signed contained the following covenant: 'It is expressly agreed, and this contract is upon the condition that the parties of the first part shall look alone for payments for material and work above contracted for to such particular portion of the fund to be assessed upon the property liable to pay for such improvement, collected and paid into the city treasury for that purpose, as shall be assessed to the property in front of which and to the charge of which the particular part of the improvement done by the said parties of the first part is to be made and collected and paid into the city treasury and to the owner or owners of said property, and the said party of the first part shall in no event require the City of Portland or any of its officers to pay the same excepting out of such particular portion of the said fund so assessed and collected into the city treasury for such portion or portions of said improvement, nor 'seek to enforce payment of the same or any part thereof against the City of Portland, or any of its officers, by any legal process or otherwise, out of any other fund, or in any manner other than as hereinbefore specified.'

"That fund has been paid to the contractor. The fund out of which said contract was to be paid cannot be increased by this proceeding at the expense of these plaintiffs. The said provision of law and the said contract are legal and binding, and were made for the benefit of these plaintiffs, and this re-reassessment proceeding is an unconstitutional attempt to impair the obligation of said contract made for the benefit of these plaintiffs, and to levy an illegal tax upon these plaintiffs and deprive them of their property without due process of law, and to make a gift to the contractor and warrant holders, and

the said proceedings are unconstitutional and void because they violate the Constitution of Oregon, Article I, §§ 18, 21, Article XI, § 9, and Article I, § 10, and the fourteenth amendment of the Constitution of the United States of America. The City of Portland is under no obligation, legal, equitable, or moral, to pay said contractor for East Yamhill street further, or to further pay the outstanding warrant on East Yamhill street fund, and any attempt to do so is a mere gift and in violation of the constitution and the law.

"(10) There is now very properly being suggested that this street and property be filled by dredging from the river, so that there will be a reasonable and beneficial improvement made and a benefit conferred upon this property. This suggestion and a glance at the condition of this property and of this roadway for all these years is a complete demonstration by history and experience that this property has not been specially and peculiarly benefited—that is, specially and peculiarly increased in value—by this elevated roadway on East Yamhill street.

"For these reasons, we object to any re-reassessment upon our property for East Yamhill street elevated wooden roadway."

On December 6, 1905, these objections were referred to the committee on judiciary and elections, and on the same day, without otherwise disposing of them, the council passed an ordinance making a reassessment for the improvement of the street, the body of which is as follows:

"Section 1. That the following preliminary assessment and reassessment prepared by the auditor of the City of Portland and filed in his office November 2, 1905, upon the lots, blocks and parcels of land lying within the district extending from the east curb line of East Water street to the west line of Union avenue and extending 100 feet south of and parallel with the south line of East Yamhill street, and 100 feet north of and parallel with the north line of East Yamhill street, as the property specially and peculiarly benefited by said improvement, is approved, confirmed and adopted."

(Here follows a copy of the preliminary assessment as made by the auditor, which is an exact copy of the

original assessment, with the addition of interest of the amounts charged against the property of Hughes and Emmons.)

"Sec. 2. That the lots, blocks and parcels of land mentioned in section 1 hereof were specially and peculiarly benefited by the improvement of said East Yamhill street in the several respective amounts assessed to the same therein, and the auditor of the City of Portland is directed to enter the same in the docket of city liens as herein made, approved, confirmed and adopted."

In both the preliminary assessment, as made by the auditor, and the ordinance of the council confirming and approving it, lot 6 in block 86, and lot 7 in block. 87, both of which were included within the assessment district, as described in and established by the resolution providing for the reassessment, were omitted, and no amount whatever was charged against either of such lots.

On Jnuary 9, 1906, this proceeding to review the action of the council in the matter of making such reassessment was instituted in the circuit court for Multnomah County, and thereafter on March 19th the council committee on judiciary and elections, to whom he had been referred the objections of plaintiffs, reported them back with a recommendation that they be overruled. On a hearing of the cause in the court below, the proceedings of the council were affirmed, and plaintiffs appeal.

REVERSED.

For appellant there was a brief and an oral argument by *Mr. Ralph R. Duniway.*

For respondent there was a brief over the names of. *Mr. John P. Kavanaugh, Mr. John J. Fitzgerald,* and *Mr. Frank S. Grant,* with an oral argument by *Mr. Grant.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. This appeal calls for the construction of section 400 of the charter, and, to some extent, a consideration of

the power and authority of the council thereunder and the method of procedure. The section reads as follows:

"Sec. 400. Whenever an assessment for the opening, altering, or grading of any street, or construction, reconstruction, or repair of any sewer, or for any local improvement which has been or may hereafter be made by the city, has been or shall hereafter be set aside, annulled, declared, or rendered void, or its enforcement refused by any court of this State, or any federal court having jurisdiction therein, whether directly or by virtue of any decision of such court, or when the council shall be in doubt as to the validity of such assessment, or any part thereof, the council may, by ordinance, make a new assessment or reassessment upon the lots, blocks, or parcels of land which have been benefited by such improvement to the extent of their respective and proportionate shares of the full value thereof. Such reassessment shall be based upon the special and peculiar benefit of such improvement to the respective parcels of land assessed, at the time of its original making, but shall not exceed the amount of such original assessment. Interest thereon from the date of delinquency of the original assessment may be added at the discretion of the council. Such reassessment shall be made in an equitable manner as nearly as may be in accordance with the law in force at the time it is made; but the council may adopt a different plan of apportionment of benefits when, in its judgment, essential to secure an equitable assessment. The proceedings required by this charter to be had prior to the making of the original assessment shall not be required to be taken or had within the intent of this section. Such reassessment shall be made and shall become a charge upon the property upon which the same is laid, notwithstanding the omission, failure, or neglect of any officer, body, or person to comply with the provisions of this charter connected with or relating to such improvement and assessment, and notwithstanding the proceedings of the council, executive board, board of public works, or any officer, contractor, or other person connected with such work, may have been irregular or defective, whether such irregularity be jurisdictional or otherwise. Such reassessment shall not be made in case of a street improvement wherein a remonstrance sufficient in law to defeat the

same shall have been filed.  The council shall, by resolution, declare the district that will be benefited by the improvement for which the reassessment is made, and shall direct the auditor or city engineer to prepare a preliminary assessment upon the property included therein within a time to be fixed by said resolution.  Upon the passage of such resolution the auditor shall, as soon thereafter as such reassessment is prepared, give notice by ten successive publications in the city official newspaper that such assessment is on file in his office, giving the date of the passage of the resolution directing the making of the same, and the time at which the council will hear and consider objections to said assessment by parties aggrieved thereby, and warning such persons not to depart until such reassessment has been completed.  The auditor shall forthwith mail to the owner of each lot or part thereof, or tract of land affected by such assessment, or to his agent, if the postoffice address of either be known to the auditor, a notice of such assessment; and if such postoffice address be unknown, then such notice shall be directed to such owners or agent at Portland, Oregon.  The owner or owners of any property which is assessed on such assessment, or any person having an interest therein, may, within ten days from the last publication herein provided, file with the auditor their objections in writing to such assessment.  At the time appointed in such notice the council shall hear and determine all objections which have been filed by any party interested.  The council shall have power to adjourn such hearing from time to time and shall have the power, in its discretion, to revise and correct, or to set aside and order the re-making of such assessment, and shall pass an ordinance approving and confirming such reassessment, as corrected and re-made by it, and such decisions shall be a final determination of the regularity, validity, and correctness of the reassessment, except as herein otherwise provided.  When said reassessment is completed and confirmed it shall be entered in the docket of city liens, and shall be enforced and collected in the same manner that other assessments for local improvements are enforced and collected under this charter and the laws governing the city.  All sums paid upon the former assessment shall be credited to the property on account of which the same were paid, as of the

date of such payment; and when it has been attempted to sell property for any assessment, and such sale is found or declared void, upon the making of the reassessment, the property shall be resold and the proceeds of such sale shall be paid to the purchaser at the former void sale or his assigns; but no proceedings shall be instituted for such reassessment unless within ten years of the passage of the resolution of intention for the making of the original work, improvement, or repair."

This section has been before this court for consideration, and it will aid materially, in arriving at a correct solution of the questions to be determined on this appeal, to briefly summarize the points already determined. They are:

(1) That it does not authorize the taking of property without due process of law, and, therefore, it is not in contravention of the fourteenth amendment to the federal constitution, or inimical to the provisions of Sections 10 and 18 of Article I of the State Constitution.

(2) That it does not authorize a reassessment without regard to the benefits, contracts, or rights, and is retrospective in its operation, applying to improvements made under previous charters. *Kadderly* v. *Portland,* 44 Or. 128 (74 Pac. 710: 75 Pac. 222).

(3) There must have been: (*a*) An actual attempt by the municipal authorities in good faith, under the regular procedure provided by the charter, to make an improvement and assess the cost thereof against the property benefited. (*b*) The proceeding must have failed because of the non-observance of some of the charter provisions. (*c*) The proceeding must have been set aside and annulled by a court of competent jurisdiction on account of such irregularities, or the council must be in doubt as to its validity. (*d*) The original contract for the improvement must have been substantially complied with, and the improvement made in substantial accord with the contract and the proceeding authorizing it. (*e*) That no notice to abutting property owners of

the intention of the council to pass a resolution for a reassessment is necessary or required. (*f*) Such resolution need not contain a finding touching the substantial compliance with the contract for the improvement. (*g*) Notice must be given to the property owners of the intended reassessment, that they may file objections thereto if they so desire. (*h*) Such notice is sufficient if it declares the improvement for which the assessment is to be made, states that a preliminary reassessment has been prepared by the auditor, as required by resolution of the council, and that it is now on file in his office; the time in which objections must be made thereto, and when the same will be heard; and notifies all persons aggrieved thereby or interested therein that they may be present at such meeting, and warns them not to depart therefrom until such reassessment· has been completed, without stating the cost of the improvement, describing the property assessed, or the amount proposed to be charged against any particular lot or parcel thereof. (*i*) The publication of such notice the required length of time, and sending a copy thereof by mail to the property owners affected, is sufficient service upon them. (*j*) The reassessment is not a new proceeding, but a mere continuation of the former proceeding ˙for the improvement of the street and the assessment of the cost thereof upon the property benefited. (*k*) The reassessment is effective, if regularly made, not only to secure a valid assessment against the property benefited, but it relates back and validates warrants issued in payment of the original improvement, so far, at least, as the assessed benefits are sufficient for that purpose. (*l*) When objections are made by the property owners to the reassessment, the council must hear and determine them. (*m*) In a suit to enjoin the enforcement of a reassessment, it will, when the record of the council is silent, be presumed that the objections of the property owners were considered by the council and found without merit, when it

subsequently passes the reassessment ordinance, as though such objections were not in the way. *Duniway* v. *Portland*, 47 Or. 103 (81 Pac. 945).

(4) In a proceeding by writ of review, however, such presumption will not attach, and the record must affirmatively show that the objections, if properly made, were considered and passed upon by the council, and merely ordering them placed on file is not sufficient. *Applegate* v. *Portland*, 53 Or. — (99 Pac. 890).

(5) Findings of the council that the work has been done substantially in accordance with the contract, the amount the property is specially and peculiarly benefited by the improvement, and the proportionate share of the cost thereof to be charged to each lot or parcel of land, is conclusive in the absence of fraud, unless made under an erroneous principle of law, except so far as the right of appeal from the assessment and apportionment is given by section 401. *Duniway* v. *Portland,* 47 Or. 103 (81 Pac. 945) ; *Michell* v. *Portland,* 53 Or. — (99 Pac. 881).

(6) That part of section 400 providing that, when property has been sold for the payment of a delinquent assessment and the sale has been declared void, the property shall be reassessed and the proceeds paid to the purchaser at the prior sale, is unconstitutional and void, because it is, in effect, the taking of one man's property and giving it to another. *Gaston* v. *Portland,* 48 Or. 82 (84 Pac. 1040).

Keeping these principles in mind, we proceed to a consideration of the questions in the present case. It is contended that the charter confers upon the council the power to make but one reassessment, and that this power is exhausted by an attempted assessment, although invalid. It is only necessary to recall the purpose of the charter to dispose of this position, and, as that is so clearly stated by Mr. Justice Wolverton in the Duniway case, we need only quote. He says: "The purpose of the act is manifest from its reading. It proceeds upon

53 Or.—— 13

the assumption that assessments for benefits received by reason of local public improvements having been made are liable to fail on account of some irregularity in the procedure or some non-observance of jurisdictional provisions in the charter, and is designed to supply a curative procedure to supplement its preceding one that has failed. It awards a new and supplementary remedy for impressing upon the abutting property a lien for the cost of the special benefits, not to exceed the original cost of the improvement, because of the failure in the first instance to carry the undertaking to a successful termination."

This being the object of the statute, it is manifest that the power of the council is not exhausted by an abortive attempt to make a reassessment, but that it may continue to exercise the granted powers until it succeeds in charging the property benefited with its just and proportionate share of the cost of making the improvement. The general rule, that all tax proceedings shall be construed in favor of the taxpayer, often results in permitting him to profit by the mere non-observance of technical and unimportant matters, and thus obtain the benefit of an improvement to his property while contributing nothing to its payment, to the loss of either the contractor or municipality, or both. It was to cover these defects and compel property owners to pay their due proportion of the cost of improving their property that the reassessment provision was inserted in the charter, and it should be so construed as to effectuate the purpose intended. It plainly authorizes an assessment or reassessment of property, benefited by a public improvement, as often as may be necessary to compel it to bear its just proportion of the cost of such improvement. The intention of the charter is that no technical defects in the proceedings for the improvement of a street which has, in fact, been improved, to the benefit of adjoining property, shall prevent or stand in the way of the benefited property

paying its just portion of the costs thereof. *State ex rel.* v. *District Court*, 77 Minn. 248 (79 N. W. 971) ; *State* v. *Weyerhauser*, 68 Minn. 353 (71 N. W. 265) ; *Gill* v. *City of Oakland*, 124 Cal. 335 (57 Pac. 150). Mr. Hamilton, in his work on Special Assessments, after referring to the cases on the subject, says that legislative authority to make additional assessment or reassessment "is not exhausted by a single exercise of such authority, which, being exercised under the sovereign power of taxation, may return again and again to the work in hand until the object of securing proper contribution from benefited parties has been accomplished." Section 841.

2. Next, it is claimed that the defendant city could not lawfully make a reassessment, because, under the charter in force at the time the improvement was made, the contractor was required to "look solely to the property affected by such improvement and the owners thereof." Section 127, Charter of 1898 (Laws 1898, p. 150). But this does not relieve the city from the moral, if not the legal, duty of exercising its charter powers to charge the cost of the improvement on the property benefited, and thus raise the fund with which to pay the contractor. Such an assessment is not the taking of one man's property to pay the debt of another. It simply requires a property owner to pay that which in morals he ought to pay. By the improvement the value of his property has been enhanced. The charter and contract under which it was made required the contractor to look to such property for his pay. The power, however, to charge the property with a lien for its proportionate share of the improvement is vested in the municipality, and it alone can compel its payment. The property owner cannot justly complain if the power is exercised, since money raised thereby goes to the payment for an improvement which has specially benefited him. Indeed, the city would probably be liable if it neglected to perform this duty.

Hamilton, Spec. Assess. § 672; *Com. Nat. Bank* v. *Portland,* 24 Or. 188 (33 Pac. 532: 41 Am. St. Rep. 854); *Jones* v. *City of Portland,* 35 Or. 512 (58 Pac. 657).

3. Next, it is contended that the city could not lawfully make the reassessment in question here, because the contemplated improvement was defeated by a legal remonstrance. The present charter declares that a reassessment shall not be made in case of a street improvement where a remonstrance sufficient in law to defeat it shall have been filed. The charter of 1898, under which the improvement in question was made, provided that when a remonstrance, signed by the owners of more than one-half of the property abutting on the proposed works, shall be filed, it shall be a bar to the proceedings, etc., unless the owners of one-half or more of the property shall petition therefor. There was a remonstrance filed against the original proceeding, but whether it was or was not signed by the requisite number of property owners was a question to be determined by the council, either at the proper time during the course of the original proceeding, or, if not so determined, then on the hearing of the objections to the proposed reassessment, if urged as an objection thereto.

4. The next question is that the resolution adopted by the council for the reassessment is insufficient, in that it contains no finding as to the value of the improvement or the benefit thereof, or whether the street had, in fact, been improved in substantial compliance with the contract. But we do not understand that the charter requires a reassessment resolution to contain any findings of this character. It is sufficient if it appears therefrom that the previous assessment has been set aside, annulled, or declared void by a court of competent jurisdiction, or that the council is in doubt as to its validity, declares the district benefited by the improvement for which the reassessment is made, and directs the auditor or city engineer to prepare a preliminary assessment upon

the property included therein within a fixed time. Whether the street has, in fact, been improved in substantial compliance with the contract and ordinance authorizing it (if not previously determined by the council), the benefit to abutting property, and the proper apportionment theerof, are all questions which may be raised by the property owners on objections to the reassessment, and need not be stated in the resolution authorizing it.

5. It is next claimed that the council did not "hear and determine" the objections made by plaintiffs to the preliminary reassessment. The charter gives to the owner or owners of property affected by a proposed reassessment the right, within ten days from the last publication of the required notice thereof, to file with the auditor their objections in writing to such assessment. The objections may raise either questions of law affecting the validity of the proceedings, or of jurisdiction or power of the council; or they may involve questions of fact, such as the improvement had not been made in substantial compliance with the contract and ordinance providing for it; or that the proceedings had been defeated by a proper remonstrance (if these questions are not already concluded by the findings of the council) ; or that the property of the objectors had not been specially or peculiarly benefited by the improvement; or that the amount charged against such property in the preliminary assessment of the auditor is in excess of the benefits, or the amount that was originally assessed against the property or of the proportionate share of the cost of the improvement justly and equitably chargeable against such property; and the like. The council is required to hear and determine such objections as are open to the property owners, and it should appear somewhere in the record of their proceedings or the reassessment ordinance that they have done so. The preliminary assessment as made by the auditor and the objections of

the property owners thereto, form an issue to be heard and determined by the council. This issue may be, as we have said, one of law or fact. If it is an issue of law, it will be sufficient if the minutes show that it has been overruled. But if an issue of fact, there should be a finding of the council thereon, either in the record or ordinance, not, perhaps, with the same technical accuracy as required in a decree or judgment of a court, but sufficient to show that the question has, in fact, been heard and determined by the council, and the result. If the objections involve questions of fact, they cannot be summarily disposed of by a general order overruling them or directing them to be placed on file.

6. Now, will it be assumed by a court of review that they had been determined adversely to objectors from the mere fact that the council passed the reassessment ordinance, except so far as recitals in the ordinance may be a finding thereon?

7. The right of the property owner to make objections to a proposed assessment against his property and have such objections heard and determined by the council is a substantial right. *Alexander* v. *Tacoma,* 35 Wash. 366 (77 Pac. 686). Indeed, it may be all the protection he has against a wrongful or unjust assessment, and therefore he is entitled to have his objections, if in proper form, heard and disposed of in an orderly way. The extraordinary power conferred by the charter upon the council in assessing or reassessing property for a public improvement, and the great liability to abuse and consequent injury, demands that the requirement of the law in all its parts, affecting the rights of the interested property owners, shall be complied with, and that the proceedings shall show upon their face that the council has considered and passed upon all questions made necessary by the charter, and the result at which they have arrived. That which the law regards as the substance of the proceeding cannot be regarded as immaterial;

nor can presumption supply its place. The property owner is given no right to notice of, or hearing upon, the question as to whether the reassessment shall be made, nor is he entitled to appear before the auditor for the purpose of protecting his rights at the time the preliminary assessment is made. All these steps may be taken without his knowledge.

8. The charter does give him a right to appear and object to the preliminary assessment, either on the ground that it is unauthorized or illegal, or that the amount charged against his property is in excess of the benefits, or is an unjust and undue proportion of the cost of the improvement, and upon these questions he has a right to a hearing before, and the judgment of, the tribunal created by law for the purpose of determining the validity of his objections. *Londonder* v. *Denver,* 210 U. S. 373 (28 Sup. Ct. 708: 52 L. Ed. 1103). The objections, no doubt, may be referred to a committee for investigation and report, but the ultimate decision of the questions raised must be made by the council itself. It is required by the charter to hear and determine the objections, and this implies an investigation and settlement of an issue of law or fact. In order, however, for a property owner to insist upon this right to be heard, he must make his objections specific, so that the council will be advised of the question he presents to it for determination. The charter imposes upon the auditor the duty of making the preliminary reassessment, and, when made, the presumption is that he has discharged his duty properly and made the same in accordance with the requirement of the charter. A property owner who desires to object must therefore state wherein the proposed reassessment is invalid or unjust. A general objection that it is not made according to benefits or that the apportionment is unjust is not sufficient. The objections should point out wherein it is claimed the proposed assessment is excessive or

injurious, or that under a proper assessment or appor-
tionment he would be required to pay less than shown
by the preliminary reassessment, and thus present some
definite question for the determination of the council.
*Chawk* v. *Belville,* 56 S. W. 414 (21 Ky. Law Rep.
1769).

9. In this case the record shows that the council did
not hear and determine the objections made by the prop-
erty owners to the proposed reassessment prior to the
time it adopted the ordinance confirming and approving
the preliminary assessment made by the auditor.   The
objections were referred to the committee on judiciary
and elections, but were not reported by that committee
until some months after the reassessment ordinance had
been adopted.   Many, and indeed most, of the objec-
tions were very general in their character, some of them
immaterial, and others presented merely questions of
law, all of which could have been disposed of by either
allowing or overruling them generally.   Some, however,
and notably Nos. 4 and 5, presented questions of fact,
which the record of the council or the reassessment
ordinance should show had been heard and determined,
and for a failure in this regard the reassessment was
prematurely and erroneously passed.

10. A contention is also made that neither the auditor
nor the council followed the provisions of the charter in
making the reassessment, but merely adopted and con-
firmed the original assessment, which was made on the
basis of abutting cost to abutting property. The improve-
ment and original assessment were made under a charge
providing that each lot or part thereof, within the limits
of a proposed street improvement, shall be liable for the
full cost of making the same upon the half street in front
of and abutting upon it, and also a proportionate share
of the cost of improving the intersections of two of the
streets bounding the block in which such lot or parcel
thereof is situated.   Laws 1898, Sp. Ses. p. 156.   The

charter under which the reassessment was attempted to be made provided that it shall be based upon the special and peculiar benefits to the property assessed, to the extent of the respective and proportionate share of the full value thereof.

It is argued that the record, therefore, shows on its face that the auditor and council adopted an arbitrary and unjust method in making the reassessment, regardless of benefits, because it simply approved and confirmed the original assessment made under the provisions of the charter of 1898. There is no requirement that the auditor in making his preliminary reassessment shall indicate thereon the method pursued by him, nor that it shall contain a statement that it is made in accordance with the benefits. Such assessment is, as its name implies, but preliminary to the actual reassessment, and is intended to advise the property owners of the amounts proposed to be charged against their property, and thus form the basis for the action of the council in making the actual reassessment. The reassessment, when made, is the act of the council and not of the auditor, and therefore we deem it unnecessary that the preliminary reassessment, as made by the auditor, should disclose on its face that it was made according to the provisions of the charter. That will be presumed.

11. But not so with the actual reassessment, when made by the council. That body is the only tribunal authorized to make the reassessment, and it has power, in its discretion, to revise and correct the preliminary reassessment, or set it aside, and order the making of a new one, and it is not until the assessment, as originally made or as corrected and revised, is approved and confirmed by the council, that it becomes a reassessment. It is essential to the validity of a reassessment, as made by the council, that it shall clearly appear upon its face that the provisions of the law, for the benefit of the property owners, have been observed, and that the coun-

cil has considered and passed, not only upon the questions of benefit, but that they have applied to each lot and parcel of land benefited by the improvement, its respective and proportionate share of the cost of making the same. *Libermann* v. *City of Milwaukee et al.*, 89 Wis. 336 (61 N. W. 1112).

12. The extent to which the property is benefited and the proportionate share of the cost of the improvement which shall be charged against it is left to the judgment of the council, and, when it has exercised its judgment, its decision—in the absence of fraud or demonstrable mistake of fact—is conclusive, except as a right of appeal may be given by the charter, or unless it has proceeded upon an erroneous principle of law. *Lincoln* v. *Street Commissioners,* 176 Mass. 210 (57 N. E. 356). But the council is required to exercise its judgment upon these questions, and unless it appears that it has done so the assessment cannot stand. *State* v. *Judges of District Court,* 51 Minn. 539 (53 N. W. 800: 55 N. W. 122).

13. If, however, the assessment purports to have been made according to benefits, it will not be disturbed on that account, except on appeal, as provided in the charter, if under any conceivable condition the finding of the council could legally and properly have been made, and this is so although the reassessment may have been, in fact, made according to the front-foot rule, when the charter requires that it shall be made according to benefit. *Alexander* v. *Tacoma,* 35 Wash. 366 (77 Pac. 686); *O'Rielley* v. *City of Kingston,* 114 N. Y. 439 (21 N. E. 1004).

14. Nor do we deem it necessary that the record of the council or ordinance making the reassessment should disclose the method adopted in doing so. The important fact is the result of the work of the council, and not the method. If, as a result of the reassessment, the premises of the objectors are not assessed more than they are benefited, and more than their proportionate

share of the improvement, they are not injured, and, therefore, it is of no importance to them what process the council employed in the matter. *In re* City of Seattle (Wash.) 91 Pac. 548.

15. Now in this case the reassessment ordinance contains a finding that the property assessed was specially and peculiarly benefited in the several respective amounts charged to the same, and this finding is conclusive in this proceeding upon that question. But the charter requires the reassessment not only to be made in accordance with the benefits, but also that each lot or parcel of land within the assessment district must be assessed only to "the extent of their respective and proportionate share" of the full value of the improvement. It is essential that it should appear that this provision of the charter has been complied with, as well as the one requiring the assessment to be made according to special and peculiar benefits. There is not only no finding in the reassessment ordinance now under consideration, or the record of the council to this effect, but it affirmatively appears that this requirement of the charter was not observed. Two lots, which were included in the reassessment district as established by the council, were not assessed at all, but the entire cost of the improvement was charged to the remaining property, thus affirmatively showing that it was not properly apportioned among all the property in the district.

Decree is reversed.                        REVERSED.