Argued February 28, affirmed March 19, rehearing denied April 23, 1918.

# CURTIS *v.* TILLAMOOK CITY.*

### (171 Pac. 574; 172 Pac. 122.)

**Municipal Corporations—Public Improvements—Reassessment.**

1.   While no reassessment for sidewalks can be made if the property has been once sold therefor and the city's claim extinguished, there may be a reassessment where, at the first sale, the mayor, without authority, bid in the property, since such transaction did not extinguish the claim.

**Municipal Corporations—Public Improvements—Reassessment.**

2.   Where the city assessed lots for a sidewalk, and the mayor, without authority, purchased at the sale on behalf of the city, the city could reassess the lands, and the owners, who knew of the lack of authority in the mayor, could not claim relief from the reassessment upon the ground that the claim was extinguished by the first assessment.

**Municipal Corporations—Initiative and Referendum.**

3.   Under Article IV, Section 1a, of the Constitution, and Section 3480, L. O. L., as to the initiative and referendum in cities, it is competent for a city or town council to provide by ordinance the scheme for the exercise of the initiative and referendum in its municipal affairs.

**Municipal Corporations—Initiative and Referendum.**

4.   Where the city council first passed an ordinance governing the initiative and referendum and later adopted an ordinance amending the charter, changing the matter of procedure in making street improvements, which was immediately approved, and the council then provided for special election submitting the charter amendment, which ordinance was approved on the same day as the ordinance changing the initiative and referendum procedure, the adoption of the charter amendment by the voters in accordance with the procedure of the new ordinance for initiative and referendum was valid.

**Municipal Corporations—Reassessments—Presumption.**

5.   In a suit to enjoin the enforcement of a reassessment, it will, when the record of the council is silent, be presumed that the objections of the property owners were considered by the council and found without merit, when it subsequently passes the reassessment ordinance, as though such objections were not in the way.

**Municipal Corporations — Change of Grade — Estoppel of Property Owner.**

6.   Where property owners had improved the street at the old grade and, after a new grade was established, petitioned the council

---

*The question of initiative and referendum under municipal form of government is discussed in notes in 11 **L. R. A.** (**N. S.**) 1092; 33 **L. R. A.** (**N. S.**) 969; 37 **L. R. A.** (**N. S.**) 332; 50 **L. R. A.** (**N. S.**) 196; **L. R. A.** 1917B, 15.                               REPORTER.

to put in a sidewalk, they could not complain that the sidewalk on the new grade was not useful by reason of the greater height of the street.

## ON PETITION FOR REHEARING.

**Municipal Corporations—Initiative and Referendum.**

7. Article IV, Section 1a, of the Constitution, providing that "cities and towns may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation," is automatically written into and is a component part of the charter of each city and town in the state.

**Municipal Corporations—Initiative and Referendum.**

8. Until a city provides a method of its own for the exercise of its initiative and referendum powers, it may follow the method prescribed by Sections 3470–3483, L. O. L., enacted under authority conferred by Article IV, Section 1a, of the Constitution; but where such city has enacted an ordinance providing a method of exercising its initiative and referendum powers, such method is substituted for the method prescribed by the legislature.

**Municipal Corporations—Initiative and Referendum.**

9. Since Article IV, Section 1a, of the Constitution, providing that "cities and towns may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation," by its own force amended the charter of every city and town in the state, a city ordinance, enacted pursuant to the power conferred by such constitutional provision, superseded not only Sections 3470–3483, L. O. L., prescribing a method for the exercise of such powers, but also an amendment to the charter of such city, enacted prior to such constitutional provision, conferring on the voters of the city authority to exercise the initiative and referendum powers as to by-laws, ordinances and amendments thereto.

**Municipal Corporations—Initiative and Referendum.**

10. Ordinance No. 235, to enable the voters of a city to amend the city charter so that street improvements could be made and the cost assessed to abutting owners, was adopted by the council March 29th, and approved April 1, 1912. Ordinance No. 233, providing the manner of exercising the initiative and referendum powers conferred on cities and towns by Article IV, Section 1a, of the Constitution, was adopted by the council March 25th, and approved April 4, 1912, becoming effective on that date. Ordinance No. 240, providing for the submission of Ordinance No. 235 at a special election to be held April 12, 1912, was adopted by the council April 2d, and approved April 4, 1912, on which date it became effective. The election was held April 12th, and Ordinance No. 235 approved by the voters. *Held,* that Ordinance No. 235 was legally adopted; all the steps prescribed by Ordinance No. 233 having been followed.

[As to construction of initiative or referendum provision in Constitution, statute or municipal charter, see note in **Ann. Cas.** 1916B, 319.]

From Tillamook: GEORGE R. BAGLEY, Judge.

Department 1.   This is a suit against Tillamook City
to quiet title to some lots in that town.   Thus called
upon to assert its claim, the municipality set up cer-
tain proceedings it had carried on for the purpose of
reassessing the property for the payment of the ex-
pense of building a concrete sidewalk along its front,
there having been a previous attempt to collect the
charge for making the improvement.   These transac-
tions were challenged by the reply.   The case was
heard on a stipulation of facts and from a decree dis-
missing the suit, the plaintiffs appeal.        AFFIRMED.

For appellants there was a brief over the names of
*Mr. C. W. Talmage, Mr. E. J. Claussen* and *Mr. William
Marx*, with an oral argument by *Mr. Talmage.*

For respondent there was a brief and an oral argu-
ment by *Mr. H. T. Botts.*

BURNETT, J.—1, 2. The first contention urged by
the plaintiffs is that the city exhausted its power over
the property by the proceedings under the first assess-
ment.   It is agreed that the claim of the city for the ex-
pense in making the improvement has never been paid
by anyone.   It is stated that when the property was of-
fered for sale the mayor of the city, although not au-
thorized to do so by any municipal law then in exist-
ence, attended and bid for the property as such officer
the amount of the assessment and it was struck off
to him.   In support of the doctrine that a sale of the
property exhausts the city's power, there are cited:
*Dowell* v. *Portland,* 13 Or. 248 (10 Pac. 308), *Gaston*
v. *Portland,* 48 Or. 82 (84 Pac. 1040), *Evans* v. *Merid-
ian Inv. & Trust Co.,* 84 Or. 246 (163 Pac. 1165), and
*West* v. *Scott-McClure Land Co.,* 84 Or. 296 (164 Pac.
554).   In all those instances the city realized its de-

mand in full by the questioned sale. The amount of its assessment was paid in money which actually went into its treasury and it was properly held that this ended the city's power. Thenceforward it had no demand upon the property whatever, and to reassess and sell again with a view of making good for the purchaser the title it had attempted to sequester would be tantamount to taking the property of one individual and giving it to another. The reason of the rule thus announced fails in the present juncture for the charge for laying the sidewalk remains unpaid. The treasury of the city has never been enriched to the value of a farthing by any of its attempts thus far to collect the actual expense of putting in the walk. Even in *Gaston* v. *Portland,* Mr. Justice HAILEY, discussing the question and speaking of a similar provision in the charter of Portland, says,

"The city would have the right to reassess and sell under Section 400 as long as its claim was unpaid by sale of the property or otherwise."

We also find this expression of the rule in *Hughes* v. *Portland,* 53 Or. 370, 386 (100 Pac. 942):

"It is manifest that the power of the council is not exhausted by an abortive attempt to make a reassessment, but that it may continue to exercise the granted powers until it succeeds in charging the property benefited with its just and proportionate share of the cost of making the improvement."

See, also, *Phipps* v. *Medford,* 81 Or. 119 (156 Pac. 787, 158 Pac. 666). In such cases equity disregards matters of form and technicalities and bases its action upon the substance of the controversy, so that if in the present litigation it had appeared that the city had actually received the desired money by its former effort to collect its assessment, an additional or subse-

quent attempt to collect for the same thing would be held void, because its power had been spent entirely. But the contrary is made to appear by the statement of the case and the stipulation of facts which furnish a reason for distinguishing the cases mentioned and leave the city free to pursue the property until in very truth its claim is paid. This also constitutes good cause for laying out of the case the action of the mayor, unauthorized as it was, in bidding for the city at the sale the amount of the assessment. Those who would now take advantage of it knew that he had no authority for his action and they cannot claim anything under it now.

The plaintiffs argue also that the municipal legislation under which the improvement was inaugurated was void. They reason thus: When the ordinance proposing the amendment to the charter was approved by the mayor the ordinance taking the place of the general state statute and prescribing a new formula for the exercise by the voters of Tillamook City of the powers mentioned had not yet received the sanction of that officer. On this basis the plaintiffs contend that its subsequent approval could not make it relate back to and affect the ordinance proposing to change the charter, and that the latter measure must have been filed and its final enactment by the people be secured by an observance of the general legislation promulgated from the legislative assembly of the state, in default of which any proceeding undertaken under a charter otherwise adopted would be of no force or effect. The ordinance respecting the exercise of these powers and the amendment to the charter each shortened the times within which certain steps in the respective processes should be taken. We find in Section 1a of Article IV of the state Constitution this mandatory precept:

"The initiative and referendum powers reserved to the people by this Constitution are hereby further reserved to the legal voters of every municipality and district, as to all local, special, and municipal legislation, of every character, in or for their respective municipalities and districts. The manner of exercising said powers shall be prescribed by general laws, except that cities and towns may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation."

Section 3480, L. O. L., also lays down the procedure on such subjects:

"In all cities and towns which have not or may not provide by ordinance or charter for the manner of exercising the initiative and referendum powers reserved by the Constitution to the people thereof, as to their municipal legislation,"

the duties required of certain state officers in state elections shall be performed by designated city officers.

"The provisions of this act shall apply in every city and town in all matters concerning the operation of the initiative and referendum in its municipal legislation, on which such city or town has not made or does not make conflicting provisions."

3, 4. The clear deduction from these excerpts is that it is competent for a city or town council to provide by ordinance the scheme for the exercise of the initiative and referendum in its municipal affairs: *State ex rel. v. Kelsey,* 66 Or. 70 (133 Pac. 806); *Duncan v. Dryer,* 71 Or. 548 (143 Pac. 644); *State v. Bozorth,* 84 Or. 371 (164 Pac. 958); *Colby v. Medford,* 85 Or. 485 (167 Pac. 487). In the last of these precedents the ordinance on the subject went into effect only the day before the election at which the charter amendment was adopted, yet it was held in substance that

the change in the organic law of the city was regularly accomplished under the procedure established by the ordinance so lately preceding it. The principle is that the people of the state have conferred upon cities and towns the power to provide for the manner in which the municipal voters will enact or reject local legislation. The power thus provided is not limited to such voters themselves, but is given to the cities and towns which act ordinarily through their councils with the approval of the mayor. Hence we hold that this power of making rules governing this function is properly accomplished by an ordinance controlling in the present instance the adoption of the charter amendment which in turn vitalized the proceedings subsequently attempted under it.

On March 25, 1912, the city council of Tillamook adopted Ordinance No. 233, providing a method of exercising the initiative and referendum powers, differing somewhat from that established by the state law already quoted. Four days afterward, on March 29th, the council adopted Ordinance No. 235, changing the manner of procedure in making street improvements, leaving out, for instance, the condition allowing any abutting owner to make the directed improvement at his private expense and without a public assessment. This was approved by the mayor on April 1, 1912. The next in order was the adoption by the council on April 2, 1912, of Ordinance No. 240, providing for a special election, submitting to the legal voters said Ordinance No. 235 which proposed to amend the charter as already stated. This submission ordinance and Ordinance 233, prescribing the method of exercising the initiative and referendum powers, were both approved on April 4th. It will be noted that the ordinance proposing an amendment

to the charter was passed and approved between the passage and approval of Ordinance No. 233. It is claimed by the plaintiffs that the new procedure respecting the initiative and referendum powers could not affect a measure which had passed the council prior to the mayor's ratification of the new process, and hence that any proceeding for improving a street based upon the charter amendment so adopted would be void. It is conceded that if Ordinance No. 233 applied to the transactions, they are regular, because the election for adopting the charter amendment complied with it in all respects. It will be observed that the charter amendment proposed by the council was of no effect whatever until adopted by the people at an election to be held thereafter. Ordinance 240 was designed to gather up all measures awaiting the action of the people and submit them to the electorate at an election to be held under the new procedure, which, as before stated, came into effect simultaneously with that enactment. It was not necessary that the manner of exercising the initiative and referendum should be made the subject of a charter amendment, because the general law shows that an ordinance would be sufficient for that purpose. At least, that is the plain intendment of the statute on that subject. When the question of amending the charter, therefore, was presented to the people, the manner of adopting it was governed by the city law then in force, the terms of which, it is conceded, were regularly observed. It follows that the new charter amendment was regularly adopted and in force when the plaintiffs themselves petitioned for the installation of the improvement.

5. They also assail the procedure of the council in passing upon objections to the reassessment, claiming

that the record of that body does not show that it heard testimony or passed in detail upon each of the exceptions involving matters of fact.   In support of their contention they refer to *Hughes* v. *Portland,* 53 Or. 370 (100 Pac. 942), *Applegate* v. *Portland,* 53 Or. 552 (99 Pac. 890), and *Hochfeld* v. *Portland,* 72 Or. 190 (142 Pac. 824).   These were all direct attacks upon the proceedings of the municipal council by means of writs of review.   In *Hughes* v. *Portland,* Mr. Justice ROBERT S. BEAN, in summarizing the principles governing cases relating to municipal assessments, says, among other things:

"In a suit to enjoin the enforcement of a reassessment, it will, when the record of the council is silent, be presumed that the objections of the property owners were considered by the council and found without merit, when it subsequently passes the reassessment ordinance, as though such objections were not in the way."

That precept was held not to be applicable in that case because the proceeding was a writ of review constituting a direct attack on the doings of the municipality.   It does govern, however, in the present case, it being a collateral attack upon the proceedings in question.

6. Considerable stress is laid upon the fact, averred, by the plaintiffs, that they had improved the street in front of their holdings only the year before, by graveling the same at a grade then in force by order of the council.   It is admitted that afterwards and before they petitioned to have the walk laid down, the city changed the grade.   It thus appears that their petition to have a walk laid upon the established grade must be held to refer to the new grade.   They complain that this is lower than the former grade upon

which the gravel in the middle of the street was laid, varying from nothing to two feet, with the result that where it is lower than the level of the street the winter rains bring mud upon the walk, so as to render it disagreeable to travel there. Hence they challenge the benefit alleged to have accrued to their property on account of the installation of the improvement. Whether there is actual utility in the sidewalk in greater or less degree is not a judicial question in the absence of fraud in its establishment. It is referable to the legislative function of the council, with which we have nothing to do. We cannot give heed to that objection. The place to urge it was before the council itself.

The amended charter of the city is almost identical on this subject with the charters of Portland, Medford and other cities giving the power to reassess until the property is finally charged with its just proportion of the expense. The language of the opinion in *Hughes* v. *Portland* here set down gives a sound reason for the validity of such a charter:

"The general rule, that all tax proceedings shall be construed in favor of the taxpayer, often results in permitting him to profit by the mere nonobservance of technical and unimportant matters, and thus obtain the benefit of an improvement to his property while contributing nothing to its payment, to the loss of either the contractor or municipality, or both. It was to cover these defects and compel property owners to pay their due proportion of the cost of improving their property that the reassessment provision was inserted in the charter, and it should be so construed as to effectuate the purpose intended. It plainly authorizes an assessment or reassessment of property, benefited by a public improvement, as often as may be necessary to compel it to bear its just proportion of the cost of such improvement. The intention of the

charter is that no technical defects in the proceedings for the improvement of a street which has, in fact, been improved, to the benefit of adjoining property, shall prevent or stand in the way of the benefited property paying its just portion of the costs thereof.''

The substantial equity of the proceedings before us is that the plaintiffs themselves petitioned the council to lay down the walk in front of their premises, on what they knew was a new grade, because the council had established it before they filed their petition, and under what they knew was the actual will of the people respecting the amendment to the charter, expressed by a large majority of the voters; and now they complain because the result is not so desirable as they could wish. The objections they urge are not valid from a judicial point of view. They have the improvement they asked for, and the city is entitled to pursue them until there is paid into its treasury either the amount of money, necessary to pay their ratable proportion of the expense, or the cash proceeds of an actual sale of the property assessed.

The decree of the Circuit Court is affirmed.

AFFIRMED.

McBRIDE, C. J., BENSON and HARRIS, JJ., concur.

---

Denied April 23, 1918.

ON PETITION FOR REHEARING.

(172 Pac. 122.)

*Mr. C. W. Talmage, Mr. E. J. Claussen* and *Mr. William Marx,* for the petition.

*Mr. H. T. Botts, contra.*

Department 1.

HARRIS, J.—The plaintiffs petition for a rehearing and insist that the charter amendment, upon which the

defendant relies, was not legally adopted. The amendment in question arose out of Ordinance No. 235. The purpose of this ordinance was to enable the voters of Tillamook City to amend their municipal charter so that street improvements could be made and the cost assessed to abutting property.

Ordinance No. 235, proposing the charter amendment, was adopted by the council on March 29, 1912, and was approved by the mayor on April 1, 1912. Ordinance No. 233 providing the manner of exercising the initiative and referendum powers, reserved by the Constitution to cities and towns, was adopted by the council on March 25, 1912, and approved by the mayor on April 4, 1912. Ordinance No. 240, adopted by the council on April 2, and signed by the mayor on April 4, 1912, provided for the submission of Ordinance No. 235 and other designated ordinances to the legal voters at a special election to be held on April 12, 1912. Both Ordinance No. 233 and Ordinance No. 240 contained an emergency clause and since both were approved by the mayor on April 4th, both became effective on that day. The election was held as directed by Ordinance No. 240. A majority of the voters cast their ballots in favor of the adoption of Ordinance No. 235 and the mayor subsequently issued a proclamation declaring that the charter had been amended. It is conceded that all the steps required by Ordinance No. 233 were taken before holding the election on April 12th, and hence if Ordinance No. 233 was controlling, Ordinance No. 235 was legally incorporated into and became a part of the city charter when approved by a majority of the voters.

7. Article IV, Section 1a, and Article XI, Section 2, of the State Constitution, adopted in 1906, set the whole sum of intramural authority at large so that the legal

voters of cities and towns may exercise all of it or only such part of it as they may choose: *State* v. *Port of Astoria*, 79 Or. 1, 18 (154 Pac. 399); but no city or town can exercise any authority until it is first written into a charter: *Robertson* v. *Portland*, 77 Or. 121, 128 (149 Pac. 545); *Rose* v. *Port of Portland*, 82 Or. 541, 554 (162 Pac. 498); *Hall* v. *Dunn*, 52 Or. 475, 490 (97 Pac. 811, 25 L. R. A. (N. S.) 193). However, Article IV, Section 1a, of the State Constitution contains a specific grant of one particularized power, for it is there declared that the manner of exercising the initiative and referendum powers shall be prescribed by general laws, "except that cities and towns may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation." This specific grant of this particularized and defined power is by force of the organic law automatically written into and is a component part of the charter of every city and town in the state, and therefore when the council adopted and the mayor approved Ordinance No. 233 they were exercising a power conferred by the charter; and this is the legal principle which underlies and supports the conclusion reached, upon the subject now under discussion, in the following precedents: *State ex rel.* v. *Kelsey*, 66 Or. 70 (133 Pac. 806); *Duncan* v. *Dryer*, 71 Or. 548 (143 Pac. 644); *State* v. *Bozorth*, 84 Or. 371 (164 Pac. 958); and *Colby* v. *Medford*, 85 Or. 485, 512 (167 Pac. 487). The charter vests the legislative power of Tillamook City in the common council, although the legal voters are also vested with legislative power: Special Laws 1903, p. 385.

8. Pursuant to the authority conferred by Article IV, Section 1a, the legislature enacted a general law prescribing a method for the exercise of the initiative and referendum powers: Chapter 226, Laws 1907, codi-

fied in Sections 3470 to 3483, L. O. L., inclusive. Until Tillamook City provided a method of its own it was permitted to follow the method prescribed by the legislature but when Ordinance No. 233 was enacted the city substituted, as it had a right to do, its own method for the one prescribed by the legislature: *Colby* v. *Medford,* 85 Or. 485, 512 (167 Pac. 487).

In 1903, three years before the adoption of Article IV, Section 1a, of the State Constitution, the legislature amended the charter of Tillamook City so as to confer upon the legal voters of the municipality authority to exercise the initiative and referendum powers as to "by-laws, ordinances and amendments thereto." This amendment did not authorize the legal voters to amend their charter, but it merely authorized them to vote upon by-laws, ordinances and amendments to such by-laws and ordinances as might be initiated by them or referred to them; provided, however, that such by-laws, ordinances and amendments were encompassed by the charter and could be predicated upon a power granted by the charter: Special Laws 1903, p. 385. If it can be said that the charter amendment of 1903 prescribes a method for exercising the initiative and referendum powers it does not follow that this method necessarily applies to the exercise of the initiative and referendum powers when the voters amend their charter for the reason that the act of 1903 purports to apply only to by-laws and ordinances, as distinguished from charter amendments. The amendment of 1903 was written with reference to the then provisions of the Constitution; and it must be remembered that it was not until 1906 that cities and towns were authorized to amend their own charters.

9. It may be assumed, however, for the purposes of the instant case that the legislative act of 1903 pre-

scribed the manner in which the initiative and referendum powers should be exercised both in passing ordinances and in amending the charter. If the charter did so provide it was by force of an act of the legislature; but when the State Constitution was amended in 1906 this amendment to the Constitution by its own force amended the charter of every city and town in the state so as to enable all cities and towns to prescribe their own method for exercising the initiative and referendum powers. When Ordinance No. 233 was enacted it was adopted pursuant to a power that had been written into the charter in 1906 and consequently Ordinance No. 233 not only superseded Chapter 226, Laws of 1907, but it also supplanted the method fixed by the legislature in 1903.

10. It is true that Ordinance No. 235 was signed by the mayor on April 1st and that neither Ordinance No. 233 nor Ordinance No. 240 was approved by the mayor until April 4th, but it is also true that between April 1st and April 4th nothing further had been done with Ordinance No. 235. The city council has authority to call a special election and submit designated ordinances to the legal voters. Ordinance No. 233, prescribing the manner of exercising the initiative and referendum powers, and Ordinance No. 240, calling a special election, became effective on the same day and hence Ordinance No. 233 would govern the manner in which the measures designated in Ordinance No. 240 should be submitted. In brief, Ordinance No. 233 fixed the method for submitting Ordinance No. 235 to the voters, and since all the steps prescribed by Ordinance No. 233 were taken it follows that Ordinance No. 235 was legally adopted.

After examining all the suggestions concerning the several questions discussed in the petition for a rehear-

ing we come to the same conclusions announced in the original opinion and the petition is therefore denied.

AFFIRMED.    REHEARING DENIED.

MCBRIDE, C. J., BURNETT and BENSON, JJ., concur.