The action was continued nisi for advisement, and at the next March term in Suffolk the opinion of the Court was pronounced by
Sewall, J.
The controversy between these parties is respecting sertain shares, originally subscribed by George A. Rogers, in the stock of the corporation, the defendants in this action. Fifteen of *279 twenty-five shares subscribed by Rogers were sold by the directors of this corporatioil on the 26th of April, 1809, and the proceeds applied to the payment of a note, in which the said Rogers was indebted to the corporation for certain instalments of'money due upon *his subscription. — The corporation attempt to justify this sale, having proceeded in making it, in consequence of a written transfer of the said fifteen shares, executed by the said Rogers on the 1st of February, 1809. This transfer was understood between the parties, and was entered in the books of the corporation, as a collateral security of Rogers’s note due them for the sum of 1900 dollars, the balance of his subscription, dated on the same day, and payable in sixty-five days. This sale was ordered on the 10th of April, upon the authority and trust declared in the transfer to the corporation ; and on the 27th the president of the corporation completed the transfer, and gave certificates of those shares to the several purchasers thereof at the vendue holden the preceding day.
That the purchasers of these shares have acquired a title to them against the company, and against all persons claiming under Rogers, seems to be conceded by the present form of action, and to be consonant to the decision of this Court, in the case of Gray vs. The Portland Bank. (4)
By the action in the case at bar, the defendants are charged in damages, — 1st. Upon the implied undertaking to admit the transfer of the fifteen shares in question, which the plaintiff avers to have been duly sold to him, by virtue of an execution against George A. Rogers ; — 2dly. Upon an implied undertaking to pay the dividends due on those shares when purchased ; — and, 3dly. Upon an implied promise to pay the plaintiff the sum of 3000 dollars received to the plaintiff’s use. This action is therefore not in the nature of a specific remedy for the shares themselves, as retained by the defendants; but for a sum of money accruing to the defendants, or lost to the plaintiff, in consequence of a misappropriation of the shares in question, or a refusal to appropriate them to the plaintiff. The action is of a new impression, and arises upon a novel provision, and extension of the law of attachments and executions in civil suits, and to satisfy judgments recovered in civil actions.
*In the year 1805, before the existence of the corporation, defendants in this action, a statute was enacted, (5) directing the mode of attaching on mesne process, and selling by execution, shares of debtors in incorporated companies. By this *280 statute, the shares or interest of any person in any turnpike, bridge, canal, or other company, then before incorporated, or which might be incorporated, with all the rights and privileges appertaining to such shares, are subjected to attachment and execution. This stat ute prescribes the mode of attachment, levy and sale, and the effects thereof.
In 1807 the Union Marine and Fire Insurance Company at Newburyport, the defendants in this action, were incorporated by statute (6) into a body politic; and the property of any member vested in the stock is, by the same statute, made liable to attach ment, and to the payment and satisfaction of his just debts to any of his bona fide creditors." The manner in which this provision is to be carried into effect, is prescribed by the statute, differing in several particulars from the mode prescribed by the- general statute before cited.
It has been made & question, therefore, in the argument of this cause, whether the attachment and levy, under which the plaintiff must entitle himself to this action, is to be examined by the former and general statute, or by the special provisions of the subsequent statute, the charter of incorporation. — And for myself, I am fully satisfied that this last statute contains the rules, by which the present case is to be decided, as to this point. It admits of some question, I think, whether the former general statute was intended to apply to corporations so dissimilar, in the condition and management of their property, as turnpikes, canals, and bridges are, when compared with banks and insurance companies; and perhaps the other companies, mentioned in the general statute, are other like companies, instituted for those definite and permanent establishments, and not moneyed institutions. This doubt is strengthened by the circumstance, * that the several statutes, by which institutions for banks and insurance are incorporated, as well since the general statute as before, contains provisions and regulations respecting attachments or executions, by which the shares of members are to be transferred. But whether this may be considered a legislative construction of the term “ other companies,” in the general statute, or not, I think the latter statute settles the rule by which the case is to be determined. A particular mode of attaching shares, and of levying executions upon them, may be considered in the nature of a special privilege, and a designed variation from the general rule.
Without regarding, therefore, the mode prescribed by the general statute, I shall examine how far the rules prescribed by the charter *281 of this company have been observed, in the attachment and levy under which the plaintiff claims.
The attachment is stated to have been made of Rogers’s shares of insurance stock, on the 7th of April, 1809, by Bagley, a deputy sheriff, upon an original writ at the suit of Samuel Williams. The officer inquired at the office of the defendants respecting Rogers’s shares, and was informed that he had none there, excepting the interest he might have in fifteen shares, which had been transferred to the company as collateral security. Bagley proceeded, notwithstanding, to give notice at the office that he attached those shares, and returned an attachment upon the said writ. And the same officer, upon an execution to satisfy the judgment recovered in that suit on the last Monday of June, 1809, has returned that on the 21st of July, 1809, the said fifteen shares were levied and taken by the said execution, and on the 22d of August were sold at vendue to the plaintiff, at five dollars per share. And it appears, that on the 4th of September following, the officer left a copy of the execution and return at the office of the defendants. The plaintiff then demanded to have the transfer to him entered in the books of the company, and to have certificates of the shares in his own name, all which was refused.
* If this were a question with the judgment debtor, respecting a property tangible in'its nature, and capable of a distinct and visible possession and delivery, the return of the officer would be, I apprehend, conclusive; and the objections made to it would not operate to defeat the purchaser of his title; which would avail, notwithstanding any delays or irregularities in the levying of the execution, or in the proceedings of the officer; no other creditor or claimant having interferred to interrupt his possession. The officer might be liable to any party injured by his negligence or mistake, whether the creditor or the debtor in the execution; and the sale might be, nevertheless, valid.
But the case at bar being with the defendants as trustees to Rogers, and as they may have become liable to any other attaching creditor, or to any person to whom Rogers may have transferred his shares previous to the sale of them by the officer, I think, independently of the question arising upon Rogers’s transfer to themselves, and as a general principle applicable to actions of this description, that the defendants are not liable to the plaintiff, unless he can show a clear and indisputable title, under the execution levied by Bagley. And in this view of the case, the delay of thirty days after the execution was supposed to be levied, before the officer proceeded to sell, is fatal, I apprehend, to the plaintiff’s title. For, by the statute of incorporation, shares taken in execution are to be *282 exposed to sale in the same manner as is by law prescribed where personal estate is taken in execution. The time for this purpose allowed and determined by the general statute (7) is four days.
Now, after notice of the levy, when four days had expired, and no sale had taken place, a new notice to the office was requisite, in my opinion, to legalize a subsequent sale. In short, the sale, as it took place, was upon a levy which had ceased, and was to be con sidered as relinquished, by the subsequent delay and the length of time which had intervened. In this opinion we are agreed; and the consequence is, that this action is not maintained. *We have thought it unnecessary to determine in this action the other question, which has been urged upon the attention of the Court, respecting the validity of contracts between corporations and their members, to secure by their notes subscriptions to the stock. This is a question of very general importance ; and it is before the Court in another action, which we are not prepared to decide.
According to the agreement of the parties, the verdict in this case is to be set aside, and the plaintiff is to become nonsuit.

Plaintiff nonsuit

 3 Mass. Rep. 364.

 Stat. 1804, c.83.

 Stat. 1806, c 89.

 1783, c. 57.