ALFRED M. COPELAND, trustee, *vs.* MAYOR AND ALDERMEN OF SPRINGFIELD.

Hampden.    May 21, 1896. — September 2, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, LATHROP, & BARKER, JJ.

*Assessments for the Construction of Sidewalks in Cities — Statute.*

The St. 1895, c. 444, which provides that the board having power to establish sidewalks in any city may construct or complete them in any street where public convenience requires it, and may assess upon abutters not more than one half

of the expense, with a deduction for previous assessments if any have been paid, does not repeal the charter of the city of Springfield, St. 1852, c. 94, § 15, which provides that the whole expense of making and of repairing sidewalks shall be assessed upon the persons owning the lands or estate against which the walks are made or repaired, nor does it supersede the special acts previously granted to other cities, and in force in their respective localities, and repugnant to its provisions.

PETITION for a writ of certiorari, to quash an assessment for the entire expense of the construction of a sidewalk in the city of Springfield, under § 15 of the city charter, St. 1852, c. 94. Hearing before *Lathrop*, J., who reserved the case for the consideration of the full court. The facts appear in the opinion.

*W. G. McKechnie*, for the petitioner.

*E. H. Lathrop*, for the respondents.

BARKER, J. It is provided by St. 1895, c. 444, that the board having power to establish sidewalks in any city may construct or complete walks in any street where public convenience requires it, and may assess upon abutters not more than one half of the expense, with a deduction for previous assessments if any such have been paid. The petitioner is assessed for the whole expense of a sidewalk constructed since the statute took effect, and the assessment must be quashed if the statute cited governs all sidewalk assessments in the city of Springfield. The respondents contend that the power given by the city charter, St. 1852, c. 94, § 15, to cause sidewalks to be made and repaired, and to assess the whole expense upon the abutters, is not abrogated by St. 1895, c. 444.

The state of existing legislation when the statute of 1895 was enacted makes it difficult to say what that statute was intended to accomplish. There were then in the Commonwealth thirty-two cities, at least ten of which had special laws under which sidewalk assessments could be made upon some basis different from the rule prescribed by St. 1895, c. 444. Besides these various rules prescribed by special laws, three different systems of sidewalk assessments were possible under general acts which cities and towns might accept. The statute in question deals with sidewalks in other respects than assessments, and its other provisions are also inconsistent with the provisions of special and general laws in force in the cities at the time of its enactment.

Of the three systems of sidewalk assessments possible under general laws when this statute was enacted, the earliest was provided for by St. 1855, c. 43, continued in force by Gen. Sts. c. 45, §§ 7, 8, and Pub. Sts. c. 50, §§ 20, 21. Under this system one half the expense is assessed upon the abutting lands, with no provision that the walk shall afterwards be maintained at public expense, nor for the deduction of previous assessments. , The second system was provided for by St. 1872, c. 303, and the rules which it prescribes for assessments are identical with the rule prescribed by St. 1895, c. 444. The assessment is made when a sidewalk is originally constructed, or when it is completed, and is of not exceeding one half the expense of construction or completion, with a provision that when the walk is constructed with edgestones and covered with brick, flat stones, or concrete it shall afterwards be maintained at the public expense, and a further provision that when so permanently constructed there shall be deducted from the assessment therefor any sum previously assessed upon the abutting premises, and paid, for the expense of the construction of the walk in any other manner. Under the third system no abutter can be assessed a sum exceeding one per cent of the valuation of his abutting estate as fixed by the last preceding annual assessment for taxes, and in all other respects it is identical with the second system. It was provided for by St. 1874, c. 107, which amended St. 1872, c. 303, in this particular, and allowed its amended provisions to be accepted by towns, while the amendment was not to take effect in any city until accepted by the city council. The provisions of Sts. 1872, c. 303, and of 1874, c. 107, were consolidated in Pub. Sts. c. 50, §§ 22–24, which were in force when St. 1895, c. 444, was passed.

There are also general laws authorizing towns to create districts to build and maintain sidewalks; St. 1870, c. 332; Pub. Sts. c. 27, §§ 37–40; authorizing the apportionment of sidewalk assessments; St. 1878, c. 249; Pub. Sts. c. 50, § 25; regulating sidewalk assessments and abatements thereof; Sts. 1874, c. 283; 1880, c. 187; Pub. Sts. c. 51, §§ 11–17; St. 1884, c. 237; and allowing the owners of lands adjoining highways or roads in towns to construct sidewalks; St. 1849, c. 24; Gen. Sts. c. 45, § 6; Pub. Sts. c. 53, § 6. Of these statutes last cited none are

important to the present question, save that the district law is another instance of the tendency of our legislation to leave the question of sidewalks to the inhabitants of the locality, and that they are proof that St. 1895, c. 444, was not intended as a revision of the whole of the general laws relating to sidewalks.

None of the general laws cited authorizing these three systems for sidewalk assessments took effect, except in towns and cities where its provisions were accepted.    We have no information as to whether the provisions of all or any of them had been accepted by the cities before the passage of St. 1895, c. 444.

The sidewalk legislation of the Commonwealth began with special acts granted to particular places.    A number of such acts had been passed before the passage of the earliest general law concerning sidewalks, and many such special acts have been granted since that time.    See Sts. 1799, c. 31; 1809, c. 28; 1824, c. 16; 1833, c. 128; 1845, c. 236; 1849, c. 133; 1852, c. 94, § 15; 1855, c. 97; 1859, c. 165; 1863, cc. 191, 192; 1864, c. 160; 1867, c. 132, § 3; 1868, c. 143; 1869, cc. 61, § 24, 154, 245, § 39, 390, 427; 1870, c. 207; 1873, c. 246, § 24; 1878, c. 120, § 5; 1886, cc. 100, 279; 1891, cc. 323, 364, § 27; 1892, c. 401; 1893, cc. 429, § 24, 437; 1895, c. 494.    Of the present cities, eleven were cities when the earliest of the general laws authorizing cities and towns to construct sidewalks was enacted. City charters granted since that date have as a rule continued in force the general laws which had been accepted by the town, and the special laws which were in force in the town or in its districts.

Without discussing the question whether, if it is shown that the general laws providing for the three different systems of assessment have been successively accepted in a city, more than one of them can be used therein, it appears from an examination of the special acts cited that when St. 1895, c. 444, went into effect there were different systems in use in different cities.

Without examining in detail the provisions of all the special statutes concerning sidewalks in the territory now within the city limits of Boston, it may be stated generally that until the year 1893 the whole expense of construction rested upon the owners of abutting lands, except in Roxbury before its an-

nexation, and only those walks were maintained at the public expense which had been relinquished in writing to the city and accepted by it. See Sts. 1799, c. 31; 1809, c. 28; 1824, c. 16; 1833, c. 128; 1845, c. 236; 1849, c. 133; 1855, c. 97; 1859, c. 165; 1860, c. 182; 1864, c. 160; 1891, c. 323; 1892, c. 401. How many different systems were in force at the same time in Boston we do not know; but it was provided by St. 1892, c. 401, § 5, that thereafter sidewalks should be made and paid for in Boston only in accordance with the provisions of that act, and of St. 1891, c. 323, and the acts in amendment of St. 1891, c. 323, sometimes called the board of survey acts.

In the year 1893 another special act relating to sidewalks in the city of Boston was passed, containing a section repealing all inconsistent acts and parts of acts. This act, St. 1893, c. 437, is substantially identical in operation with St. 1872, c. 303, and with St. 1895, c. 444. Whether it affected the operation of the board of survey acts, so called, or not, a question upon which we express no opinion, it brought the largest closely built section of land in the State under a system of sidewalk assessments identical with that prescribed two years later by St. 1895, c. 444, and which had been first authorized in the year 1872 by St. 1872, c. 303, and it did this by an act which took effect upon its passage, without being accepted by the city. As a consistent step in the same general direction, the city of Boston was authorized by St. 1894, c. 82, to repay not more than forty-five per cent of any sums paid for the construction of sidewalks under St. 1892, c. 401.

In other cities, systems granted by special acts, and inconsistent with that of St. 1895, c. 444, were in use when that statute was enacted.

In Springfield, under its charter, St. 1852, c. 94, § 15, the whole expense of making and of repairing sidewalks was assessed upon the persons owning the lands or estates against which the walks were made or repaired.

In Lawrence under St. 1868, c. 143, in Salem under St. 1869, c. 154, in Chelsea under St. 1870, c. 207, and in Cambridge under St. 1891, c. 364, § 27, the expense of edgestones and of covering materials only was assessed upon abutters, and the walks when constructed and covered were afterwards maintained at the expense of the city.

In Lowell, by St. 1893, c. 429, § 24, the whole expense was assessed upon abutters, and the walks when constructed were maintained and kept in repair by the city.

In Worcester, by St. 1869, c. 390, the city council could establish and grade sidewalks and set curbstones, and construct the walks with such material as it might deem expedient, and from time to time re-establish, grade, reconstruct, and repair any sidewalk, and assess upon the abutters the whole or any part of the expense, that portion not so assessed being paid by the city.

In Haverhill, by St. 1869, c. 61, § 24, the city council might require the abutters to pave the walks with brick, stone, or concrete, and to keep the same in good repair, the city first setting the curbstones and paving the gutters, and if an abutter refused to comply, the city might cause the work to be done, and recover of him in tort the expense of paving and keeping in repair.

In Fall River, under St. 1869, c. 245, § 39, one half of the expense of construction was assessed upon the abutters on the sidewalks, and the walks were maintained and kept in repair by the city.

A peculiar system of dealing with sidewalks, by which the whole expense would be assessed upon the owners of those estates abutting upon the street in which the walk was made which were benefited by the construction of the walk, was granted to the town of Fitchburg by St. 1869, c. 427.

In Pittsfield, under St. 1878, c. 120, § 5, as amended by St. 1886, c. 100, and extended to the whole city and continued in force by the city charter, St. 1889, c. 411, § 33, one half of the expense of the making, reconstruction, or repair of sidewalks was assessed upon all lands specially benefited, whether such lands abut on the sidewalk or not.

We find no special legislation concerning sidewalks in the twenty cities which have not been referred to by name, and we are not informed as to which of the systems provided for by general laws were in force in any of them when St. 1895, c. 444, was enacted.

From this review of the legislation, it appears that, if St. 1895, c. 444, was intended to repeal all other rules upon the matters which it dealt with, and to prescribe the only rule under which after its passage sidewalk assessments should be

made in all of the thirty-two cities, it changed the local laws of many cities upon a matter as to which the Legislature up to that time had no uniform policy, and which it had often left in great measure to the discretion of municipalities, by granting special acts widely differing from one another, as well as by giving to each the choice of accepting more than one system provided for by general laws.

The Legislature could repeal all or any of the special or the general acts which have been cited, either wholly or as affecting cities alone, and could set up the provisions of St. 1895, c. 444, as the only rules concerning the matters dealt with to be thereafter followed in any city. If it clearly appears that it was intended to impose upon all cities the system of that statute as the only rule for constructing and completing sidewalks, and of making assessments for their cost, that intention is to have effect, although the repugnant rules which were previously in force in any city are found in its charter, or in some other special act granted to its inhabitants. But, in accordance with the rule of construction stated in *Brown* v: *Lowell*, 8 Met. 172, when special acts growing out of the peculiar wants, condition, and circumstances of the locality have been granted to a particular place, and afterwards a general law is passed having some of the same purposes in view, and extending them to places in which the special acts had no operation, whether the general act is an implied repeal of all repugnant special acts depends upon a careful comparison of the statutes and the objects intended to be accomplished, and, speaking generally, it requires "pretty strong terms in the general act, showing that it was intended to supersede the special acts, in order to hold it to be such a repeal." See also *Pease* v. *Whitney*, 5 Mass. 380, 382; *Goodenow* v. *Buttrick*, 7 Mass. 140, 142; *Titcomb* v. *Union Ins. Co.* 8 Mass. 326, 333; *Bartlet* v. *King*, 12 Mass. 536, 545; *Howe* v. *Starkweather*, 17 Mass. 239, 242; *Nichols* v. *Bertram*, 3 Pick. 342; *Commonwealth* v. *Worcester*, 3 Pick. 462, 474; *Ashley, appellant*, 4 Pick. 21, 23; *Gage* v. *Currier*, 4 Pick. 399, 404; *Nichols* v. *Squire*, 5 Pick. 168; *Vinton* v. *Welsh*, 9 Pick. 87, 92; *Commonwealth* v. *Cooley*, 10 Pick. 37, 39; *Goddard* v. *Boston*, 20 Pick. 407, 410; *Commonwealth* v. *Kimball*, 21 Pick. 373, 376; *Wright* v. *Oakley*, 5

Met. 400; *Gilson* v. *Emery*, 11 Gray, 430 ; *Commonwealth* v. *Rumford Chemical Works*, 16 Gray, 231; *Tracy* v. *Goodwin*, 5 Allen, 409 ; *Commonwealth* v. *Kelliher*, 12 Allen, 480, 481 ; *Harnden* v. *Gould*, 126 Mass. 411; *United Hebrew Benevolent Association* v. *Benshimol*, 130 Mass. 325.

Pursuing such a comparison, we find that a city which accepted the provisions of St. 1872, c. 303, might make sidewalk assessments of not exceeding one half the expense of the walk, and that although that statute was amended by St. 1874, c. 107, the provisions of the amending statute did not apply to any city unless accepted by its city council. St. 1874, c. 107, § 3.   Therefore, from the passage of St. 1874, c. 107, until February 1, 1882, when the Public Statutes took effect, cities might still accept the provisions of St. 1872, c. 303, without accepting those of St. 1874, c. 107, and so might still adopt the system of sidewalk assessments of not exceeding one half the expense without the one per cent limitation of St. 1874, c. 107, § 1. But under the language used to consolidate these two statutes in Pub. Sts. c. 50, §§ 22–24, a city could adopt the provisions of Pub. Sts. c. 50, §§ 22, 23, and in so doing necessarily took the system as amended by the addition of the one per cent limitation of assessments incorporated in § 22.   The existing status in cities which had already adopted one or both of the statutes was preserved by the provisions of Pub. Sts. c. 50, § 24, but cities which adopted the system thereafter had to take it as amended by the limitation.

A necessary effect of St. 1895, c. 444, however construed, is to give the power to construct and complete sidewalks in the manner first provided by St. 1872, c. 303, without the one per cent limitation of assessments, to any city which has accepted the provisions of both St. 1872, c. 303, and of St. 1874, c. 107, and to any city the inhabitants of which when a town have accepted the provisions of St. 1872, c. 303, as amended by St. 1874, c. 107, and to any city which has itself accepted, or whose inhabitants when it was a town have accepted, the provisions of Pub. Sts. c. 50, §§ 22, 23, while before the passage of St. 1895, c. 444, no such city could lay sidewalks under that system without being controlled in making the assessments by the limitation mentioned.   As this is a necessary effect of the statute, it must

be considered to have been a purpose which the Legislature intended to accomplish by the act. Another necessary effect of the statute, however construed, is to give to every city which has no special sidewalk legislation peculiar to itself, and in which the provisions of none of the general laws concerning sidewalks have been adopted, the power, without accepting a general law, to construct and complete sidewalks in the manner first provided by St. 1872, c. 303, and which is identical with the system of St. 1895, c. 444.

This gives a field for the operation of St. 1895, c. 444, without its trenching upon powers granted by any special law to particular places, and which, when differing from the rules laid down by general laws, must be presumed to have been granted because of their peculiar wants, condition, or circumstances.

In a system of legislation which allows a choice to its municipalities of two or more systems of dealing with sidewalks under general laws, and which often grants to particular places other and different systems, it is not incongruous and is not a long step to provide that more than one method of laying sidewalks and of assessing their cost may be within the power of a city at the same time. Such a state of things certainly existed in the largest city of the Commonwealth up to the passage of St. 1893, c. 437, if it does not now exist. If such a practice is consistent with sound legislation there is no difficulty in the language of St. 1895, c. 444, in construing the act as a permissive one, under which, the board having power to establish sidewalks, may in any city act if it chooses so to do, while if it prefers other systems granted by its special laws, or by general laws which it has accepted, deeming them more just in a particular instance, it may act under other systems. We neither adopt nor deny this construction of the statute, but remark that a still wider field would be given for its operation if one of its purposes should be found to be to give to such cities as did not already possess it this power, to be used when in the opinion of its officials having power to establish sidewalks it best suited the case.

If the provisions of St. 1895, c. 444, were part of a statute in which the Legislature dealt with the whole subject of sidewalks throughout the Commonwealth, it would be more easy to believe

that the provisions were intended to abrogate previous repugnant special laws. But the statute has no operation in the towns, and they comprise by far the largest portion of the territory of the State. It does not purport to be a general and comprehensive revision of the sidewalk law, or of any branch of that law. It contains no express repeal, and has no repealing clause of any kind. It is not a part of any attempt to make the laws of the Commonwealth uniform throughout its extent upon matters of a local character, for the Legislature is making no such attempt, but continues its practice of granting to different localities different schemes as to sewers, water supply, police, and many other local and municipal matters.

If the general tendency of our legislation was towards uniformity in the regulation of those matters which the Commonwealth leaves ordinarily to its municipalities, putting the enactment of St. 1895, c. 444, with the passage of Sts. 1893, c. 437, and 1894, c. 82, relating to sidewalks in Boston, we might perhaps hold that it was the intention of the Legislature to apply the system for which it provides to all the cities as the only system thereafter to be used in constructing or completing sidewalks, and in imposing any part of the expense upon individuals, notwithstanding the absence of any repealing clause or any express declaration that this system was to be the only one in use in any city.

But upon the whole we do not find either in the language of the statute, or in the state or course of legislation upon the subject of sidewalks, or in the state or course of legislation upon analogous matters which are usually committed to the cities and towns, any sufficient warrant to allow us to hold that St. 1895, c. 444, was intended by the Legislature to supersede the special acts previously granted to various cities, and in force in their respective localities and repugnant to its provisions, or that it was intended to repeal the provision of the charter of the city of Springfield under which the petitioner has been properly assessed. The petition for a writ of certiorari to quash the assessment is denied.

*So ordered.*