Argued June 15, reversed July 14, rehearing denied September 8, 1914.

## HOCHFELD *v.* PORTLAND.

(142 Pac. 824.)

**Pleading—Definition—Form of Allegations—Conclusions of Law.**

1. In a petition for a writ of review to correct errors in a reassessment for a street improvement, allegations that the city acted in violation of law, that the proceeding and assessment and reassessment were illegal, and that the legislature has not authorized, and under the Constitutions of the state and of the United States could not authorize, the city to do certain acts, are conclusions of law which add nothing to the strength of the pleading, and such pleading may often cast a cloud upon a really good case.

**Municipal Corporations—Public Improvements—Mode of Improvement not Mandatory.**

2. Portland city charter, giving the council authority to levy a two-mill tax which shall constitute a special fund to be used only to pay for the construction of bridges other than those across the Willamette River, the estimated cost of which shall not be less than $15,000 each, but declaring that these provisions do not include elevated roadways, tramways, or structures other than bridges across gulches and ravines, does not restrict the city to the erection of a

bridge as the manner of improving a street at any particular place, such authority being permissive and not mandatory.

[As to power of municipality to levy assessments, see note in 55 Am. Dec. 285.]

#### Municipal Corporations—Public Improvements—Authority for Reassessment.

3. A resolution for reassessment for a street improvement, reciting that the previous reassessment was set aside and declared void by the decree of the Circuit Court, sufficiently showed a cancellation of the former assessment to authorize a reassessment.

[As to the purposes for which a municipal corporation may levy assessments and taxes, see note in 16 Am. St. Rep. 365.]

#### Municipal Corporations — Public Improvements — Assessments — Liability for Damages.

4. That a city, in improving a street, trespassed on the lands of abutting owners by building an embankment to hold the fill of the street without having condemned the property for public use, does not affect or vitiate an assessment for the expense of the improvement. In case private property of a citizen is damaged in making such improvement, the city is responsible the same as an individual or corporation.

#### Constitutional Law—Municipal Corporations—Obligation of Contracts —Municipal Assessment for Improvement.

5. That premises had been assessed for an elevated roadway under a charter provision that the property was thereafter to be exempt from special taxes on account of the maintenance of a street in the future, did not constitute a violation of any contracts with the property holder exempting him from liability by reason of an assessment for an additional improvement under an amended charter.

#### Municipal Corporations—Public Improvements—Question for Review.

6. On a writ of review to correct an assessment for a street improvement, an objection that the preliminary reassessment is several thousand dollars larger than the assessment, and that the price by cubic yard for fill is excessive, raises no issue for review.

[As to validity of special assessment levied by front foot instead of according to benefit, see note in Ann. Cas. 1913A, 655.]

#### Municipal Corporations—Public Improvements—Improvements Included in Single Proceeding.

7. It is proper to include, in a single proceeding and assessment by a city, the making of a fill, macadamizing the road, and laying sidewalks on top of the fill, for the city is not compelled to improve its streets by piecemeal.

#### Municipal Corporations—Public Improvements—Assessments—Findings by Council.

8. In a proceeding for an assessment for a street improvement, objections that, in making the fill, a sewer was broken, whereby a large amount of material was carried away, that some gravel used in the grade had been carted off, that some of the property owners had partially filled the street, for all of which they were being as-

sessed, making double payment therefor, and that they were being charged for the slope of the embankment outside of the street lines and upon their own property, raised questions of fact requiring findings of record by the council, in the absence of which they cannot be considered on writ of review to review the assessment.

**Municipal Corporations—Public Improvements—Assessments.**

9. Abutting owners cannot be made to pay for a fill in a street twice, nor for what they have already done themselves, nor for the erection of an embankment on their own property without condemnation proceedings by the city.

[As to changing grade of street, compensation to be paid for in damages, see note in 4 Am. St. Rep. 401.]

**Municipal Corporations—Public Improvements—Assessments—Hearing by Council.**

10. Where, at the time set for hearing by the city council of objections to a street assessment, the ordinance and objections were referred to the committee on streets, and the report of the committee, some months later that the remonstrators were called for, and, no one appearing, the remonstrances were considered, and the committee recommends that the ordinance pass and the remonstrances be overruled, was adopted on motion, such action was error; the objectors being entitled to a hearing before the council.

**Municipal Corporations—Public Improvements—Assessments—Review.**

11. On a writ of review to correct a street assessment, the court's refusal to compel a return of the engineer's cross-section drawings, so as to show the portion of the fill extending beyond street lines was not error, being material only on questions of fact which are not considered under a writ of review.

**Municipal Corporations—Public Improvements—Assessment—Review.**

12. Under Section 611, L. O. L., relating to writs of review, providing that the court shall have power to affirm, modify, reverse or annul the decision or determination reviewed, and, if necessary, by mandate direct the inferior tribunal to proceed according to its decision, where it is held on writ of review that a city council, though having jurisdiction of the proceedings, erred in omitting to determine questions of fact by findings entered on its record, the cause will be remanded, with directions to instruct the city to give the notice required by its charter for hearing the objections appearing in the record and to proceed to determine them in accordance with the opinion of the court.

From Multnomah: HENRY E. McGINN, Judge.

The plaintiffs, S. Hochfeld and others, sued out a writ of review to correct errors committed by the council of the City of Portland in a reassessment of property for a street improvement. From a judg-

ment dismissing the writ, plaintiffs appeal. Reversed and remanded, with directions.

REVERSED.    REHEARING DENIED.

For appellants there was a brief and an oral argument by *Mr. Ralph R. Duniway.*

For respondents there was a brief over the names of *Mr. Lyman E. Latourette* and *Mr. Walter P. La Roche,* City Attorney, with an oral argument by *Mr. Latourette.*

In Banc.    MR. JUSTICE BURNETT delivered the opinion of the court.

1. Someone has said that ''pleading is the statement in a logical and legal form of the facts which constitute the plaintiff's cause of action or the defendant's ground of defense.'' Referring to the principles of logic, it may be said that, in pleading a plaintiff's cause of action, the law applicable to the case in hand is the major premise which it is not necessary to state or prove because it is matter of which the court takes judicial knowledge. The facts upon which he relies constitute the minor premise which alone he must state and prove in order to enable the court to draw the conclusion which the law attaches to such a syllogism. In a petition covering more than 30 pages of the printed abstract, the plaintiff has consumed at least two thirds of the space in stating conclusions of law. ''The city acted in violation of law in this proceeding,'' ''said proceeding and assessment and reassessment were illegal,'' and ''even the legislature of the State of Oregon has not, and under the Constitution of the State of Oregon and the Constitution of the United States of America, could not, authorize the city

72 Or.—13

to do these acts'' are pet phrases of the document. These are mere conclusions of law which add nothing to the strength of the pleading, but only encumber the record and add to the labors of the court and counsel in unraveling the intricacies of the litigation, often clouding a really good case: *Holmes* v. *Cole,* 51 Or. 483 (94 Pac. 964); *Fisher* v. *Union County,* 43 Or. 223 (72 Pac. 797); *Southern Oregon Co.* v. *Coos County,* 30 Or. 250 (47 Pac. 852); *Drummond* v. *Miami Lbr. Co.,* 56 Or. 575 (109 Pac. 753); *Purdin* v. *Hancock,* 67 Or. 164 (135 Pac. 515).

By a careful process of sifting the wheat of facts from the chaff of legal conclusions, we are able to discern that the City of Portland had improved East Oak Street from the east line of Union Avenue to 65 feet east of the east line of East Sixth Street, and that it was proceeding to reassess the expense of the improvement upon property within a certain defined district, which it had determined was liable because of benefits accruing thereby. At the time appointed for hearing, the property owners or some of them filed objections to the reassessment which the plaintiff alleges were not heard by the council but were referred to the street committee. The essence of the whole contention, then, is that the council did not decide upon the objections of the petitioners.

2. The first objection in substance is that the improvement consisted in filling a deep ravine in East Oak Street to grade instead of bridging the same; the contention being that a bridge should have been built and paid for out of what was known as the bridge fund, described in Section 114 of the charter of the City of Portland. The provision on that point is that the council has authority to levy a two-mill tax on the property in the city which shall constitute a special

fund to be used only for paying for the construction of bridges in the city other than those across the Willamette River, the estimated cost of which shall not be less than $15,000 each. This does not restrict the council to any particular manner of improving a street. The clause mentioned is permissive and not mandatory. Indeed, the section itself declares that those provisions shall not be construed so as to include elevated railways, tramways or any structures other than bridges across gulches and ravines.

3. The second objection is to the effect that the city must first have set aside and canceled the first assessment before attempting a second one. The resolution for the reassessment recites that the previous "reassessment of benefits for the improvement of East Oak Street * * was set aside, annulled, declared and rendered void" by the decree of the Circuit Court of the State of Oregon. No action of the council could be more effective than that declared in the resolution.

4. The third objection is in substance that the city claimed at the outset that it would only improve the street, but in doing so trespassed upon the lands of the abutting owners by building thereon an embankment to hold the fill of the street without having condemned the property for public use. The case of *Davis* v. *City of Silverton,* 47 Or. 171 (82 Pac. 16), decides this point adversely to the petitioners by holding in substance that, if in the prosecution of a street improvement the city trespasses upon private property, it does not vitiate the assessment levied for the expense of the betterment. In its governmental capacity the city had jurisdiction to prosecute the improvement. If, in its character as a corporation conducting an enterprise, it inflicts damage upon private property, it is responsible the same as any other actor

or contractor, but it does not defeat its jurisdiction as an agency of government. This is the principle upon which *Giaconi* v. *Astoria,* 60 Or. 12 (113 Pac. 855, 118 Pac. 180), was decided; it being there held as follows:

"A municipal corporation is not liable for mere consequential injuries resulting from ordinarily careful administration of a reasonably prudent plan of street improvement; but, if the city itself executes any public work, it acts ministerially and is liable for any injury resulting from its negligence or maladministration."

5. It is further contended that the tax was void because the premises involved had paid for an elevated roadway across the gulch in question to the former City of East Portland, under a charter provision that the property was thereafter to be exempt from special taxes on account of the maintenance of a street in the future; but this claim also was settled against plaintiffs by the case of *Ladd* v. *City of Portland,* 32 Or. 271 (51 Pac. 654, 67 Am. St. Rep. 526), holding that an amendment of that charter and an additional improvement of the street in pursuance thereof did not constitute a violation of any contract with the property holder exempting him from liability for further improvements. It is a legislative question, the decision of which the freeholder cannot resist by judicial proceedings.

6. Again, the petitioners say that "the preliminary reassessment is several thousand dollars larger than the assessment," and that the price of 33 cents per cubic yard for fill is excessive; 25 cents being full compensation for the same. This raises no issue for review. It is not contended that the city did not advertise for bids, or that there was any fraud in letting

the contract. It may be that between private parties similar work could be procured for 25 cents per cubic yard, but it is quite natural that a contractor who expects to encounter stubborn litigation over the payment of his compensation will cover that risk by increasing his bid. The taxpayer has to meet the increased expense in the ultimate analysis.

7. The petitioners also urge that "there is an attempt made to make a fill and also macadamize the road and lay sidewalks on top of the fill, and these are separate improvements which cannot be combined legally in one improvement, and therefore this proposed assessment should be rejected on this account." Why they cannot be combined is not pointed out; but it is clearly within the charter power of the municipality to provide for a finished street, including not only roadway, but also sidewalks and curbs. The city is not required to improve its street by piecemeal. Thus far in the investigation the objections have involved only issues of law.

8. Finally, however, the objections charge in substance that, in making the fill, a sewer in the street was broken, whereby a large amount of material was carried away; that some gravel used in the grade had been carted off; that some of the property owners had partially filled the street, for all of which they were being assessed, making double payment for the same, and that they were being charged for the slope of the embankment built outside of the street lines and upon their own property. These last constituted questions of fact calling for a decision from the council by findings of record as to their truth.

Passing the question of whether or not these were sufficiently definite to challenge the assessment, we

find in the leading case of *Hughes* v. *City of Portland,* 53 Or. 370 (100 Pac. 942):

"The council is required to hear and determine such objections as are open to the property owners, and it should appear somewhere in the record of their proceedings or the reassessment ordinance that they have done so. The preliminary assessment as made by the auditor, and the objections of the property owners thereto, form an issue to be heard and determined by the council. This issue may be, as we have said, one of law or fact. If it is an issue of law, it will be sufficient if the minutes show that it has been overruled. But, if an issue of fact, there should be a finding of the council thereon, either in the record or ordinance, not, perhaps, with the same technical accuracy as required in a decree or judgment of a court, but sufficient to show that the question has in fact been heard and determined by the council and the result. If the objections involve questions of fact, they cannot be summarily disposed of by a general order overruling them or directing them to be placed on file."

9. Those who pay the expenses of public improvements are entitled to have none but legitimate charges imposed upon them. They cannot be made to pay for a fill twice, nor for what they have already done themselves, nor for what was the result of trespass upon their property. Whether or not this was in fact included in the reassessment was a question to be determined by the council. We may concede that the city had the right to condemn the property by eminent domain proceedings for the purpose of resting thereon, the slope of the fill, but until it does so its trespass forms no basis for increase of taxation.

10. The record discloses that December 22, 1909, was appointed by the council for hearing objections to the reassessment, and all persons aggrieved thereby or interested therein were required to attend the meet-

ing and warned not to depart therefrom until said assessment and reassessment had been completed. The objections in question were filed December 13, 1909. The petitioners allege that:

"The plaintiffs at said time and place were represented by their attorney, and said ordinance No. 21,067 was introduced by the committee on streets, and read the first and second times; then the objections of Ralph R. Duniway, as attorney for these property owners, were not read, but were referred to the committee on streets without reading or any attention being paid them by council, and without any opportunity being given for a hearing."

The record of the council appearing in the return to the writ recites that:

"An ordinance entitled 'An ordinance making a reassessment for the improvement of East Oak Street * * ' was introduced by the committee on streets and read twice. Remonstrance of Ralph R. Duniway for objecting property owners was read. On motion of councilman Devlin, duly seconded and carried, said ordinance and remonstrance were referred to the committee on streets. * * "

No further action by the council itself appears until April 13, 1910, when the journal of its proceedings discloses that:

"The committee on streets, to whom was referred ordinance entitled 'An ordinance making a reassessment for the improvement of East Oak Street * * ' and remonstrance against the same, presented a report recommending 'that said ordinance do pass. The remonstrators were called for, and, no one appearing, the remonstrances were considered, and your committee further recommends that said remonstrances be overruled.' On motion the report of the committee was adopted and said remonstrances overruled."

While it is permissible, within the meaning of *Hughes* v. *Portland,* for the council to refer such matters to its committees or its officials for the purpose of acquiring information on the question, yet it is incumbent upon that body, by the terms of the charter, to itself hear the questions both of law and fact, and upon the latter to make findings determining the truth of the same. As applied to the questions of law involved in the objections to which allusion has been made, the record of the proceedings of the council is sufficient. Not so, however, as to the questions of fact upon which the Hughes case requires findings to be made. This duty cannot be delegated to any officer or committee, but must be performed by the council itself at a time and place of which notice must be given with an opportunity to objectors to be heard. The failure to do this embodied in the summary overruling of the objections, not only in their legal aspect, but also upon the questions of fact, constitutes the essential error of the proceedings of which the petitioners complain.

11. The plaintiffs complain of the court's refusal to compel a return of the engineer's cross-section drawings, so as to show the portion of the fill extending beyond the street lines. In this there was no error. The drawings might have been useful in establishing the truth of the objections on that point as a matter of evidence in the hearing before the council, but the court is not concerned with questions of fact in considering errors urged by proceedings under a writ of review.

12. Although the city had jurisdiction to act in the proceeding, yet it acted erroneously in its omission to determine the question of fact involved by findings entered upon its record. This is not a fatal error

authorizing the court to declare the reassessment proceeding utterly void. It is provided in Section 611, L. O. L., that:

"Upon the review, the court shall have power to affirm, modify, reverse, or annul the decision or determination reviewed, and, if necessary, to award restitution to the plaintiff, or by mandate direct the inferior court, officer, or tribunal to proceed in the matter reviewed according to its decision."

The conclusion is that the decision of the Circuit Court dismissing the writ should be reversed, and the cause remanded, with directions to instruct the defendants to give the notice required by its charter for hearing the objections appearing in the record, and to proceed to the determination of them in accordance with this opinion.   REVERSED.   REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE did not sit.

MR. JUSTICE RAMSEY dissents.