Submitted on brief September 2, affirmed September 23, 1919.

## KILLINGSWORTH *v.* PORTLAND.*

(184 Pac. 248.)

**Municipal Corporations—Questions of Law and Fact not Reviewable on Writ of Review.**

1. In writ of review proceeding to set aside street improvement proceedings and assessment of the expense thereof, the court will not consider question whether the street improved was a part of a bridge approach; such question being a question of fact, or mixed law and fact, not reviewable under writ of review.

**Municipal Corporations—City Council's Determination as to Benefits from Improvement Conclusive.**

2. In writ of review proceedings to set aside street improvement proceedings, court will not review question of whether property assessed was actually benefited, or whether apportionment of cost made by assessment was just or fair; the city council's determination as to benefits being conclusive.

**Municipal Corporations—Viaduct may be Constructed as Part of Street Improvement.**

3. Amended Portland City Charter of 1913, Section 190, subdivisions 1–4, providing in subdivision 4, that council "shall" levy tax for

---

*On necessity of special benefits to sustain assessment for local improvements, see note in 14 L. R. A. 756.    REPORTER.

construction of bridge to cost more than $15,000, does not preclude council from providing for construction of viaduct, as part of street, at cost of more than $15,000, by assessment under old charter Sections 373 and 374, incorporated into amended charter by Section 284 of amended charter.

[As to betterments on public lands, see note in 81 Am. St. Rep. 188.]

**Statutes—Implied Repeal not Favored.**

4. Implied repeals are not favored.

From Multnomah: JOHN P. KAVANAUGH, Judge.

In Banc.

The purpose of this proceeding is to set aside by writ of review certain proceedings of the City of Portland, whereby the city authorized and entered upon the improvement of Union Avenue in said city, from the south line of Bryant Street to the south line of Columbia Slough Road; and assessed the cost of the same to the property in the vicinity of said street and supposed to be benefited thereby. A very large part of the improvement consists in the building of a viaduct over the railroad track of the Oregon-Washington R. R. & Navigation Co., where said track intersects said Union Avenue.

It is claimed by the plaintiffs and petitioners for the writ of review that the improvement is for the benefit of the general public and of small if any benefit to the abutting owners; that the assessments are out of proportion to the benefits conferred upon the different pieces of property, and that a part of the property assessed is not benefited at all, but rather damaged by the improvements. It is also claimed that the street in question is an approach to the interstate bridge across the Columbia River, which forms a link in the Pacific Highway, and that, therefore, the improvement should be considered as a part of said bridge.

Further, it is claimed that by reason of an amendment to the city charter, providing that the city shall levy taxes not to exceed one-half mill on each dollar, to provide for the construction of bridges and the filling of streets across gulches and ravines, the power, which it is conceded the city previously had, to assess the costs upon the property benefited, is taken away and destroyed and, therefore, as a matter of law, the city council was without any jurisdiction to make this assessment, and the proceedings against the property of the petitioners are without jurisdiction and void.

AFFIRMED.

For appellants there was a brief submitted over the names of *Messrs. Malarkey, Seabrook & Dibble* and *Mr. M. A. Zollinger.*

For respondents there was a brief prepared by *Mr. Walter P. La Roche,* City Attorney, and *Mr. L. E. Lartourette,* Deputy City Attorney.

BENNETT, J.—1. It seems clear that in this review proceeding we cannot inquire into the question of whether or not the street improved was a part of the approach to the Columbia River bridge. That is a question of fact, or mixed law and fact, which cannot be tried out upon a writ of review. In *Smith* v. *Portland,* 25 Or. 297, 301 (35 Pac. 665), it is said:

"The authorities * * fully sustain the position that the writ of review only brings up the record of the inferior court, and that the Superior Court, upon review, tries the cause only by the record, and only as to questions of jurisdiction, and as to error in proceedings. It will not on review try questions of fact."

And again:

"If courts will not examine the evidence when in the record, they certainly will not examine it when, as in this case, it is no part thereof."

In *Elmore Packing Co.* v. *Tillamook County,* 55 Or. 218, 223 (105 Pac. 898), it is said:

"A recital in the petition of independent facts cannot aid the record sought to be reviewed. It must show the facts presented by the record from which the error appears."

And in *McCabe-Duprey Tanning Co.* v. *Eubanks,* 57 Or. 44, 49 (110 Pac. 395, 396), it is said:

"The writ of review only lies to review the action of the lower court, when it has exceeded its jurisdiction or has exercised its functions erroneously; that is, in a manner not authorized by law. * * Error of the court in passing upon the sufficiency of the pleadings is not an erroneous exercise of jurisdiction. Even if error was committed, it was done in the rightful exercise of jurisdiction, and is not reviewable in this proceeding."

In this case it does not appear from the record brought up by the writ, that the street in question, or the part of the street improved, was a mere approach to the bridge in any immediate sense. Indeed, it seems to be conceded that it was two miles or more away from the bridge. And as far as the record brought up here by the city council shows, it was only an approach to the bridge in the same sense that any street or highway leading to the bridge, would be an approach. At any rate, that is a question of fact which we cannot inquire into in this proceeding, and we have no definite and certain means of arriving at the truth in regard thereto.

2. Neither can we, in this proceeding, inquire as to whether the property assessed was actually benefited

or as to whether the apportionment of the cost made by the assessment was just or fair.   In *King* v. *City of Portland,* 38 Or. 402, 429 (63 Pac. 2, 55 L. R. A. 812), which is a leading case in this state upon this subject, and in which the question was carefully and elaborately considered by Mr. Justice WOLVERTON, it is said:

"But we are inclined to believe that the better doctrine deducible from adjudged cases, including those of the Supreme Court of the United States, is that the assessment will be upheld wherever it is not patent and obvious from the nature and location of the property involved, the district prescribed, the condition and character of the improvement, the cost and relative value of the property to the assessment, that the plan or method adopted has resulted in imposing a burden in substantial excess of the benefits, or disproportionate within the district as between owners."

In *Hughes* v. *Portland,* 53 Or. 370, 394 (100 Pac. 942, 951), it is said by Mr. Justice R. S. BEAN, delivering the opinion of the court:

"The extent to which the property is benefited and the proportionate share of the cost of the improvement which shall be charged against it, is left to the judgment of the council, and, when it has exercised its judgment, its decision—in the absence of fraud or demonstrable mistake of fact—is conclusive, except as a right of appeal may be given by the charter."

And in *Wagoner* v. *La Grande,* 89 Or. 192, 202 (173 Pac. 305, 308), it is said by Mr. Justice McCAMANT, quoting from Page & Jones on Taxation:

"The question of benefit to the property owner is not a judicial question unless the court can plainly see that no benefit can exist and this absence of benefit is so clear as to admit of no dispute or controversy by evidence."

And further:

"Plaintiffs contend that the council erred in fixing the district to which the expense should be chargeable. This determination is a legislative act which the court cannot review."

These authorities seem to be conclusive in this state and they are in line with the general authorities.

Cooley on Taxation, Volume 2, 1180, presents the matter thus:

"With the wisdom or unwisdom of special assessments, when ordered in cases in which they are admissible at all, the courts have no concern, unless there is plainly and manifestly such an abuse of power as takes the ease beyond the just limits of legislative discretion."

It is perfectly plain here that it is not apparent, and this court is in no position to say, that the property in question was not benefited by this improvement, or to pass intelligently upon whether the improvement was a benefit or not, or if so to what extent. Therefore, if the city council had authority to act in this matter at all and to make an assessment of this kind thereon, then its action is beyond the power of this court to review in this proceeding.

The most seriour and difficult question in the case arises on the construction of the provisions of the amended charter authorizing and enjoining the levy of a general tax, to make improvements of the class, to which viaducts like the one forming part of this improvement, belongs. In deciding this question it will be necessary to trace somewhat the history of the authority for street improvements in the City of Portland.

In 1903 (Sp. Laws 1903, Chap. 1, Art. IV), the state legislature granted to the City of Portland, a charter

among the provisions of which, in regard to local improvements, were the following:

"Section 373.   The term 'improve' and 'improvement,' as used in this chapter in reference to streets shall be construed to include all grading or regrading, paving or repaving, planking or replanking, macadamizing or remacadamizing, graveling or regraveling, and all manner of bridge-work and roadway improvement or repair and all manner of constructing sidewalks, crosswalks, gutters and curbs within any of the streets in the City of Portland, or any part of any such street.

"Section 374.   The Council, whenever it may deem it expedient, is hereby authorized and empowered to order the whole or any part of the streets of the City to be improved, to determine the character, kind and extent of such improvement, to levy and collect an assessment upon all lots and parcels of land specially benefited by such improvements, to defray the whole or any portion of the cost and expense thereof and to determine what lands are specially benefited by such improvement and the amount to which each parcel or tract of land is benefited."

Section 284 of the amended charter adopted in 1913 continues the sections of the old charter, in regard to public improvements heretofore quoted, as ordinances except as the same may be inconsistent with other provisions of the new charter, that section being as follows:

"Section 284.   That so much of Sections 362 to 421, both inclusive, of the Charter of 1903, as is not inconsistent with the provisions of this Charter, shall remain in full force and effect as ordinances only subject to repeal and amendment and to the enactment of new legislation by the council in the manner and subject to the restrictions in this section provided upon the subject of improvements of whatever nature to be paid for by local assessment.   Such Sections shall be known as the Local Improvement Code.   No repeal of any por-

tion thereof, amendment thereto nor new legislation upon the subject shall be made by the Council except by ordinance which shall be published in full and in its final form in the City official newspaper at least thirty days before its final passage. Notice shall be given in the City official newspaper and by publishing conspicuous advertisements in one or more daily papers published in the city of Portland, having a circulation of not less than 1500 not less than five times; the last of such notices to be published not less than ten days before the final adoption of any such amendment, repeal or new legislation. Upon the adoption of any amendment to or the repeal of any part of such Local Improvement Code or the adoption of any new legislation upon the subject, the whole Local Improvement Code shall be printed in pamphlet form and the Auditor shall be furnished with a sufficient number of copies thereof for distribution to all persons inquiring for the same. The Council, in the exercise of its general legislative powers, may provide in its discretion for the performance of any public work by or on behalf of the City and for the method of payment thereof, but said Local Improvement Code must provide for the giving of not less than ten days' notice by publication, or by mailing to persons interested, (a) of the intention to make any improvement, and (b) of any proposed assessment against property owners for the same, and the right shall be preserved to the owners of sixty per centum in extent of the property affected by any assessment for a local improvement, except for street opening or sewers to defeat the same by remonstrance.''

Section 190 of the new charter is as follows:

''The Council, on or before the 31st day of December in each year shall levy upon all property not exempt from taxation, taxes to provide for the payment of expenses of the City for the ensuing year as follows:

''1. A tax not to exceed 8 mills on each dollar valuation to provide for the payment of the general ex-

penses of the City, including maintenance and repair of sewers and paved streets, except as hereinafter in this Section provided, which shall be credited to the General Fund.

"2. A tax sufficient to meet the interest on the bonded indebtedness of the City, to be credited to the bonded indebtedness interest fund.

"3. A tax of not less than four-tenths of one mill on each dollar valuation for the purchase, payment or redemption of the bonded indebtedness of the City, to be credited to the sinking fund.

"4. A tax not to exceed one-half mill on each dollar valuation to provide for the construction of bridges elsewhere than across the Willamette River, the filling of streets across gulches and ravines, the estimated cost of bridges, not to be less than $15,000 and the fills $20,000; and the construction of overhead or underground crossings across railroad tracks; provided that this section shall not release any company or corporation having a franchise or otherwise liable, from paying its full share of the cost of construction of bridges, fills or crossings as provided by the terms of its franchise or otherwise existing."

It is contended by the plaintiffs and petitioners that subdivision 4 of the section just quoted is inconsistent with the provisions of the old improvement sections, which authorized the assessment of abutting property for bridge work and viaducts, where such bridge work is to cost in excess of $15,000—in other words, that the provision that the council "shall" levy a tax not to exceed one-half mill to provide for the construction of bridges, the estimated cost of which is greater than $15,000, is mandatory not only in the sense that it enjoins and commands the levy of a tax, for that purpose, but also in the sense that it prohibits the building of such bridges and fills in any other way; and that it impliedly repealed that part of the sections carried over into the new improvement Code by Section 284,

which authorized the building of such bridges in any case, by assessment.

3. We cannot approve of this reasoning. The effect of it would be that a bridge which cost up to $14,999 would be built entirely by local assessment, while a bridge costing $15,001, or more, would be built entirely by general tax on the public, without regard to the fact that it might be of just as great local benefit, as the smaller bridge or fill; or might be entirely local in its purpose. Such a construction would be obviously unjust and ought not to be adopted unless the language is very plain and compelling.

It is plain that a bridge or fill costing more than $15,000 or $20,000 might be almost entirely local in its purposes. As, for instance, where it was not part of any general line of traffic, but furnished the only means of communication from its own locality to the general city streets. In such case there would be no public benefit except that of furnishing access to the particular locality, and this measure of public benefit, exists and must necessarily exist, in all local improvements. Again, the general public may already have a direct means of travel, generally paralleling the line of the proposed improvement, and the benefit of the improvement may be wholly or chiefly to give the abutting property access to these general lines of travel at both ends of the improvement. In either of these cases it would be plainly just that a part or all of the expense of the improvement, including the fills and bridges should be assessed upon the abutting owners.

We think the provisions of Sections 373 and 374 of the old charter, carried into the new by Section 284, and the provisions of Section 190 of the new charter, must be construed together; and that under their terms, the city council still has power and it is in its

discretion, and it may at its option (subject to the limitations of the charter) pay for such bridges wholly or partly by assessment (if 60 per cent of the property owners do not remonstrate), or if it has funds for such improvement, out of the half mill tax provided by Section 190. In other words, the provision of subdivision 4, Section 190, while perhaps mandatory as to the levying of a tax, is not mandatory but permissive as to what bridges, or what proportion of the cost of such bridges, shall come from that fund.

This conclusion seems strengthened by the latter clauses of Section 284 of the new charter which, as we have seen, provides:

"The council in the exercise of its general legislative power, may provide, in its discretion for the performance of *any public work* by or on behalf of the city and for the method of payment thereof * * and the right shall be preserved to the owners of 60 per centum in extent of property affected by any assessment for a local improvement, to defeat the same by remonstrance."

4. Implied repeals are not favored and it must be supposed that the charter intended to preserve the provisions of Sections 373 and 374, except where the same are plainly and clearly repugnant to some other provisions of the charter. We think, in this case, they are not at all repugnant. In *Hochfeld* v. *Portland,* 72 Or. 190, 195 (142 Pac. 824), the court had under consideration the provision in the old charter, authorizing the city to levy a two mill tax on the property of the city, to provide a fund for the construction of bridges in the city, which should not cost less than $15,000. Mr. Justice BURNETT, delivering the opinion of the court, says:

"This does not restrict the council to any particular manner of improving the street. The clause mentioned is permissive and not mandatory."

We think there has been no change in the charter, which affects the power of the council in regard to the manner of building bridges or making improvements, or takes away the right to build by assessment, even if the levying of a tax to provide a fund for that purpose should be construed as mandatory. It still leaves the council the discretion to build out of that fund, or in the other ways provided by the charter, if that fund should be insufficient or if the circumstances are such as to make it just to build as a local improvement.

This construction seems to be in line with the authorities generally in similar cases. In *Planting Co.* v. *Tax Collector,* 39 La. Ann. 455, 458 (1 South. 873, 876), there was a levee district which originally had power to make assessments against the property benefited to build levees. A provision of the Constitution of that state was that the—

"General assembly may divide the state into levee districts * * to that effect it may levy a tax not to exceed five mills on the taxable property situated within the boundaries of said district subject to overflow."

It was claimed that this provision was—

"A provision of the means for the exercise of the prior power granted, which is restrictive and impliedly prohibitive of a resort to any other means."

But the court refused to accept this theory, saying:

"It is obvious that the object of the last clause * * was not to exclude the power of local assessment but simply to confer the power of taxation."

In *Copeland* v. *Springfield,* 166 Mass. 498 (44 N. E. 605), there was a charter of the city providing that the

entire expense of constructing sidewalks should be as- sessed upon the abutting owners. Afterwards a general law was passed applicable to all cities, providing that such cities "may construct walks in any streets * * and may assess upon abutters, not more than one half of the expense." The city was proceeding under the old law and assessing the entire cost to the abutting owners. It was claimed the later act repealed the old law by implication, and that the assessment was invalid. The court held there was not such a repeal but that both laws stood and give the city a choice of remedies.

In *Borough of Greensburg* v. *Young,* 53 Pa. St. 282, the act in question, providing that the city might provide for "improving the streets and alleys" and "also to assess, levy and collect a tax for such purposes." It was claimed that this language excluded any power to levy local assessments for such purposes but the court held otherwise.

In Volume 1, Page and Jones on Assessments, Section 228, it is said:

"Accordingly, of two constructions, one of which will cause inconsistencies between parts of statute *in pari materia,* and the other of which will reconcile the statutes and prevent inconsistencies, the latter will prevail. Repeals by implication are not favored. Hence, if by one construction two statutes passed at different times may be construed together so as to give full force and effect to each, and by another construction they are inconsistent so that the later statute will operate as an implied repeal of the prior statute, the former construction will be preferred."

And again in Section 237 of the same work it is said:

"Since it is within the power of the legislature to confer upon a public corporation both the power to levy a general tax and the power to levy a local assess-

ment, with discretion to determine in which method it will pay for the improvement in question, a grant of power by the legislature to a public corporation authorizing it to levy a general tax to pay for a certain kind of public improvement does not abrogate another grant of power authorizing such corporation to levy special assessments to defray the expense of such improvements.''

Judgment of the lower court is affirmed.

AFFIRMED.